SANDERS v. BLUEFIELD WATERWORKS & IMPROVEMENT CO.

(Circuit Court of Appeals, Fourth Circuit. February 7, 1901.

No. 326.

1. APPEAL—QUESTIONS REVIEWABLE—FINALITY OF DECREE.
   A decree which definitely rejects the theory upon which plaintiff's suit is based, which is put in issue by the pleadings, is final and appealable, and after the time for appeal therefrom has expired becomes conclusive upon the rights of the parties, so far as they are thereby adjudicated, although it leaves the question of their specific rights thereunder to be subsequently determined from time to time as changed circumstances may render it necessary; and no question determined by such decree can be reviewed on appeal from any such subsequent order.

2. SAME—FINDINGS OF FACT.
   The concurrence of a master and the court in a finding of fact that an injunction previously granted by the court has not been violated raises a very strong presumption on appeal that such finding is correct, and it will not be disturbed, unless some obvious error has intervened in the application of the law, or some serious and important mistake has been made in the consideration of the evidence.

Appeal from the Circuit Court of the United States for the District of West Virginia.

There is, at or near the border line between the states of Virginia and West Virginia, a large, bold spring of pure water, known as the "Beaver Pond

Spring," which has as an outlet, a creek called the "Beaver Pond Creek." This creek, shortly after it leaves its source, enters the land of Walter M. Sanders, complainant below, appellant here. It flows through this land for about 275 feet, south of a turnpike; thence, crossing this road, it enters and flows through the land of an adjacent proprietor, John A. Bailey; finally flowing into the land of said Sanders, through the most fertile and productive parts thereof, for more than half a mile. The farm of Sanders is chiefly valuable as grazing land, and is used in grazing cattle, horses, and other live stock. It is dependent for water chiefly on small streams flowing into the Bluestone river, its main dependence for water being this Beaver Pond creek; and that portion of the land above described as south of the turnpike is dependent for water on this Beaver Pond creek alone. In 1892 Charles Bailey and wife, who owned the lands surrounding and including the Beaver Pond spring, sold and conveyed in fee to the Bluefield Waterworks & Improvement Company one acre thereof, which included the spring, whereupon this company proceeded to put up extensive works around said spring for the purpose of taking water therefrom and using it in supplying water for the city of Bluefield, a few miles distant. The deed of conveyance from the Baileys to the waterworks company contained a clause providing that the vendee should construct, lay, and forever maintain a water pipe, three-fourths of an inch in diameter, in such a manner as that sufficient water from the said Beaver Pond spring to fill the same will enter and continue to flow naturally through said pipe, and be discharged therefrom into the natural channel on the lands of the grantors through which the water now flows, and that the waterworks company had a right to construct a pipe for carrying off water from said spring, not to exceed two feet in diameter. Sanders being, as has been said, the owner of land lying on the Beaver Pond creek, and as to some portion of his land being wholly dependent thereon, finding that there was a check upon the flow of the water in this creek, by reason of the construction of these waterworks, filed his bill in the circuit court of the United States for the district of West Virginia against the Bluefield Waterworks & Improvement Company, setting forth his grievances and praying that the defendant company, its officers, agents, servants, hands, or any person or persons holding under it, be enjoined perpetually from taking any water from Beaver Pond spring, or from the stream that flows from said spring, or from in any manner diverting or depleting the flow of said spring or creek, and for general relief. A temporary injunction was granted, restraining defendant company from diverting any of the water from its natural channel, but allowing it to use the water for domestic purposes and for live stock grazing on its lot. This temporary injunction was subsequently modified so as to allow it to remove not exceeding 100,000 gallons each 24 hours. The defendant demurred to the bill, and then answered fully. The cause, being at issue, was referred to a master, before whom a long and exhaustive examination was made; many witnesses being examined. The master made his report, which, with exceptions thereto, was heard by the circuit court. After consideration, the court filed its decree. As the character of this decree, whether it be final or interlocutory, is a vital question, it is inserted here:

"Upon consideration whereof, the court is of opinion that, while the master has found that the entire flow of the Beaver Pond spring may be necessary to the proper use and enjoyment of the plaintiff's farm, yet the plaintiff has not an exclusive right to the use and enjoyment of all the water flowing from that spring. And therefore the finding of the master, under the order of the court to ascertain what the flow and output of said spring was, is not a finding that affects the rights of the defendant, but was merely a finding of the facts to enable the court to pass intelligently upon the rights of the parties; and for this reason it is unnecessary for the court to sustain the exceptions to the master's report. But the court is further of the opinion that the plaintiff, being the owner of a large tract of land through which this creek flows which has its source in Beaver Pond spring, is entitled to protection against the defendant from the use of the water flowing from the spring so as to prevent a reasonable and adequate supply for the lands of the plaintiff in this cause. But the court is further of opinion that the defendant, being the owner in fee of the land on which this spring is located and from which the

water flows, is entitled by reason of such ownership to such use and supply of the water as is necessary for its enjoyment of its land, so far as it does not tend to diminish the supply of water that is necessary for the use and enjoyment of the plaintiff's land. The purpose and object of this order being to protect the rights of both the plaintiff and defendant in their respective rights to the use and enjoyment of the water flowing from said spring, and the court holding that neither party is entitled to exclusive rights in the flow of the spring and use of the water. It is therefore adjudged, ordered, and decreed that the defendant be perpetually enjoined and restrained from diverting from the natural flow and channel of so much of the water as is a reasonable and adequate supply for the use and enjoyment of the plaintiff's lands until the further order of this court. But this injunction is not to operate so as to prevent the defendant from the use and enjoyment of so much of the water as is necessary and adequate for the proper enjoyment of the defendant's lands upon which said spring is located. It being the purpose and object of this injunction to prevent the defendant from diverting from the natural flow and channel of the water issuing from the spring so much of the supply as to injure the plaintiff in the use of the water reasonably necessary and adequate for the use and enjoyment of the land through which the stream flows. It being the opinion of the court that it is incumbent upon the defendant to so regulate the use of the water as that the water shall remain an incident to the land, and not the land incident to the water. It is further ordered that, in the event that there is a violation of the spirit and legal effect of this order by either party, upon an application by either party to the court, the master in this cause will be directed to investigate the facts and ascertain whether this order of injunction has been violated, and, if so, by which of the parties, and to report his investigation and findings to the court for its further action; and for this purpose Master in Chancery Joseph Ruffner is continued as the master in this cause until the further order of the court. The court is further of opinion that the costs occasioned and arising upon this proceeding shall be equally divided between the plaintiff and defendant."

This decree was filed February 24, 1897. On September 27, 1897, the court entered the following order:

"On motion of the plaintiff in this case, by Henry & Graham, his attorneys, it is ordered that Joseph Ruffner, master commissioner, do go upon the lands of the Bluefield Waterworks Company, and ascertain whether the defendant company has violated the order heretofore entered in this case in its use of the supply of water to such an extent as to prevent the plaintiff having a reasonable supply for the use of his farming lands, as provided for in the former decree in this cause, and to report such other facts as in his examination he may deem pertinent for the consideration of the court. This order is to be executed at his earliest convenience, upon reasonable notice being given by the master, of from five to ten days, to counsel of record on both sides; but this order is made upon motion of the plaintiff in this case, and if, after it is entered, he desires to abandon his motion, he will notify the commissioner not to execute said order."

A great deal of testimony was taken under this order, and the master made his report of the testimony, and exceptions were filed thereto. The exceptions were overruled, the report was confirmed, and it was adjudged that the provisions of the decree of February 27, 1897, had not been violated by defendant. The proceedings against the defendant were thereupon dismissed, with costs. This decree bears date June 21, 1899. Upon the filing of this decree, complainant obtained leave to appeal June 21, 1899, and filed his assignments of error. Upon these the cause comes here. Of these exceptions 1, 2, and 3 go to the decree of February 24, 1897. Exceptions 4, 5, and 6 go to this last decree on the second report of the master.

S. C. Graham, for appellant.

A. W. Reynolds and F. B. Enslow, for appellee.

Before FULLER, Circuit Justice, and BRAWLEY and WADDILL, District Judges.

BRAWLEY, District Judge, after stating the case, delivered the opinion of the court.

It is clear, from the pleadings and the proofs, that the sole object of the defendant company in the purchase of the spring and the erection of its plant was to divert the water to the town of Bluefield, and the capacity of its plant was sufficient to absorb more than 1,250,000 gallons in 24 hours, which was more than the outflow of Beaver Pond spring, except during a very wet season. The plaintiff's case was founded upon the principle that every riparian proprietor has an equal right to the use of the water which flows in the stream, and to have the full benefit thereof in the state in which it exists naturally as it was wont to run, uncontaminated and substantially undiminished, save for the necessary uses of life, by the acts of landowners above him; that such landowner may use the water while it runs over his land, but cannot unreasonably detain it or give it another direction, and must return it to the ordinary channel when it leaves his premises. "Aqua currit et debet currere" is the maxim upon which his case rested; and as it was plain that the defendant company had no use for the water for domestic, agricultural, or manufacturing purposes, and that it was intended to divert and diminish the quantity of water which would descend to the proprietors below, an injunction was asked to restrain such diversion.

The defendant's case rested upon four separate defenses: (1) That the defendant company was an internal improvement company, duly authorized by its charter, the ordinances of the council of the city of Bluefield, and the general laws of the state of West Virginia to acquire and use the waters of Beaver Pond spring for the purpose of supplying the city of Bluefield and the public therein with water, which was a public use; (2) that the plaintiff was estopped by his conduct, because of his acquiescence in the work of the defendant and its expenditure of a large sum of money in the erection of its plant; (3) that the plaintiff would not be injured by the use of the water from the spring in the manner proposed by the defendant; (4) that the plaintiff's damages would not be irreparable, and the court of equity had no jurisdiction to grant relief by injunction.

The main issue was clear, and that was whether the defendant company had the right to divert any of the water from its natural flow. The scope of the bill appears in the prayer for injunction, which was that the defendant be "enjoined perpetually from taking any water from Beaver Pond spring, or from the stream that flows from said spring, or from in any manner diverting or depleting the flow of said spring or the creek." The temporary injunction granted November 15, 1894, was fully responsive to this prayer; but on January 16, 1895, this injunction was so modified as to allow the defendant company to remove from the said spring a quantity of water not exceeding 100,000 gallons of water during each period of 24 hours. The cause was then referred to the master, for the purpose of reporting (1) the present and future effect upon the plaintiff's land if the defendant was allowed to remove all of the water provided for in the deed to defendant from Carmac Bailey and wife; (2) the supply of water for plaintiff's land, exclusive of the water which flowed from Beaver Pond

spring; (3) the effect upon plaintiff's lands if defendant was allowed to remove and carry away from the spring all the water which it could pump with its then-existing pumps and plant; (4) all the sources of water supply upon plaintiff's land, and the capacity of such source, and the location of any such streams or springs; (5) the population of the city of Bluefield, and the amount of water necessary to supply such city, its citizens, and all persons therein for all proper and useful purposes; (6) the general topographical features of the surrounding country. It thus appears that from January 16, 1895, the court was preparing to reject the theory upon which the plaintiff's case rested and upon which its temporary injunction was founded, and the decree of February 24, 1897, finally rejected that theory altogether.

The plaintiff did not ask in his bill that defendant be restrained from the diversion of so much of the water as might be needful or useful to him, leaving it to the uncertain, varying, and shifting determinations of the future to fix the measure of his needs or rights; but, basing his rights upon what he claimed to be sound and immutable principles founded upon the law of nature itself, he asked that the defendant be restrained from diverting any of the water whatsoever from the Beaver Pond spring. The decree of February 24, 1897, was final and conclusive as to such contention. It refused the injunction prayed for, it rejected the plaintiff's theory as to his rights, it decided that the defendant company had the right to divert and consume and to diminish the quantity of water which would descend to the riparian owners below. It was a decision upon the merits, and not a mere interlocutory decree directing an inquiry necessary to the elucidation thereof; nor was it a decree directing proceedings for the purpose of enabling the court thereafter to apply the details, and suspending the action of the court for further investigation, but a final decision, fixing the principles and dividing the costs. The merits of the controversy between plaintiff and defendant were disposed of, and could not again be reopened, except on appeal from that decree. Any ulterior proceedings are but a mode of executing such decree. The plaintiff acted upon it as a final decree; for within a few months he took orders looking to its being carried into execution. If it had been appealed from, and there had been an affirmance here, the court below would have had nothing to do but to execute the decree it had already entered. As to all matters determined by the decree of February 24, 1897, it must be regarded as a final decree, and it closes any further consideration of them; there having been no appeal until after the expiration of two years.

The essence of the controversy was the right to pump water from Beaver Pond spring and deliver it to the town of Bluefield. This was decided adversely to the plaintiff. "The rule is well settled and of long standing that a judgment or decree, to be final, within the meaning of that term as used in the acts of congress giving jurisdiction to this court on appeals and writs of error, must terminate the litigation between the parties on the merits of the case, so that, if there should be an affirmance here, the court below would have nothing to do but to execute the judgment or decree it had already entered." Waite, C. J., in Bostwick v. Brinkerhoff, 106 U. S. 3, 1 Sup. Ct. 15,

27 L. Ed. 73. The cases on this subject are reviewed in McGourkey v. Railroad Co., 146 U. S. 544, 13 Sup. Ct. 170, 36 L. Ed. 1079. A decision upon the merits does not lose its character as a final decree because it may itself become the source of future litigation between the parties. When the court below, after a full hearing, refused the injunction prayed for, such refusal was appealable, and an appeal in proper time would have brought to this court for final determination whether the defendant company could lawfully divert any of the water from the Beaver Pond spring. Acquiescence in that decree gives to it the character of finality as to the point decided, and precludes further consideration of it. That decree decides that the defendant company may divert a part of the water. Thenceforth the plaintiff's rights no longer rest upon the principle upon which his case, as stated in his bill, was grounded, but upon an altogether different principle, to wit, that the defendant company, by reason of its ownership in fee of the land, was entitled "to such use and supply of the water as is necessary for its enjoyment of its land"; the only limitation upon such abstraction and diversion from the natural flow of the spring being the inhibition to divert so much as would injure the plaintiff, whose rights in the stream were limited to so much of the water as was "reasonably necessary and adequate for the use and enjoyment of the land through which the stream flows." The only question not finally decided related to the amount of water that might be thus taken. As to this the decree provided that, if there was any violation of the order by either party, then, upon application to the court, an investigation would be had, not for the purpose of correcting, modifying, or adding to the decree, but evidently to punish any disobedience of it.

The appeal from the decree of June 21, 1899, brings to us simply a question of fact. The plaintiff alleged that the defendant was violating the decree of February 24, 1897. Upon this allegation testimony was taken by the master, and all of it was reported to the court. The master found as a matter of fact "that the defendant company had not violated the order hereinbefore made in this cause in its use of the supply of water to such an extent as to prevent the plaintiff from having a reasonable supply for the use of his farming lands as provided in the former decree of this court." In that finding the court concurred. The concurrence of the court with the master in a finding of fact is very persuasive in this court. It is to be taken as presumptively correct, and will not be disturbed on appeal, "unless some obvious error has intervened in the application of the law, or some serious and important mistake has been made in the consideration of the evidence." Furrer v. Ferris, 145 U. S. 132, 12 Sup. Ct. 821, 36 L. Ed. 649. A fortiori, when the question of fact is whether an order of the court has been disobeyed, and both the master and court concur in the conclusion that it has not been disobeyed. This last decree settles only the question that upon the facts then presented the court did not consider that the defendant was violating its injunction. How much water may be taken by the defendant without violating the terms and spirit of the decree of February 24, 1897, must depend upon conditions that may vary from day to day; and the defendant would

be liable in an action for damages for any injury which plaintiff suffers, if he can establish by proof that the defendant company is taking more water than is allowed by such decree.  The appeals are dismissed.