KEMP et al. v. NATIONAL BANK OF THE REPUBLIC OF NEW YORK.

(Circuit Court of Appeals, Fourth Circuit. May 7, 1901.)

No. 324.

1. APPEAL—APPEALABLE DECREE—FINALITY AS TO CERTAIN ISSUES.

A decree which determines the invalidity of a trust deed is final and appealable as to the trustee and beneficiary in such deed, although it is interlocutory only as to other matters involved in the suit, in which such parties have no interest.

2. INSOLVENCY—VALIDITY OF PREFERENCES.

Under the laws of Virginia, as they existed in 1896, a debtor, although insolvent, had the right to prefer certain creditors, if done in good faith and for a valid consideration, and such preferences are not invalid because they operate to hinder and delay other creditors.

3. BANKS—LIABILITY OF OFFICER FOR FALSE STATEMENTS—STATUTE OF FRAUDS.

An officer of a bank cannot avail himself of the statute of frauds, requiring a promise to answer for the debt of another to be in writing to sustain an action thereon, to protect him from liability arising from a false and fraudulent statement made by him to a depositor in regard to the condition of the bank, by reason of which the depositor suffered loss.

4. STATUTE OF FRAUDS—WAIVER—RIGHT OF CREDITORS TO INVOKE.

Creditors cannot invoke the statute of frauds to defeat a liability of their debtor, which he has himself recognized by giving his notes and security therefor.

5. MORTGAGES—VALIDITY—CONSIDERATION.

A county treasurer, who was a large depositor of public money in a national bank, applied to the president for information as to the bank's condition, and was by him assured that the bank was solvent and able to pay all its indebtedness. It was in fact insolvent, as the president knew, and subsequently failed, and the depositor was obliged to individually make good to the county the amount lost through his deposit. Thereafter the president, who was also insolvent, without the knowledge of the depositor, executed to him his individual notes, secured by a trust deed for the amount so lost. *Held*, that such notes and deed were supported by a legal consideration, which was the liability of the maker for the loss sustained by reason of his false and fraudulent statement, and were valid as against his other creditors.

Appeal from the Circuit Court of the United States for the Western District of Virginia.

This is an appeal from a decree of the circuit court of the United States for the Western district of Virginia, rendered on the 21st day of December, 1898, annulling and setting aside a deed of trust from T. D. Berry and wife to C. A. Board, trustee, dated April 22, 1898, to secure two negotiable notes, of $2,500 each, held by the appellant Price. The appellee filed its bill in equity in the lower court, setting forth that it was a creditor for a large amount of Thomas D. and W. W. Berry, Jr., individually, and of the firm composed of said parties, trading as Berry Bros., and of the First National Bank of Bedford City, and sought to have set aside as fraudulent and void nine certain deeds of trust executed by said T. D. Berry, and admitted to record on the 14th and 19th days of May, 1896. Said complainant alleged that the said Berry and his said firm were hopelessly insolvent at the time of the making of said several deeds, and that the deeds were made in anticipation of said Berry's creditors, and particularly complainant, procuring judgments at the term of the circuit court of Bedford county then about to commence; his purpose being to place his assets, individual and social, beyond the reach of his creditors. Complainant further alleged that the said T. D. Berry was president of the First National Bank of Bedford City, and a director of the Liberty Savings Bank; that with the business of said institutions he was thoroughly conversant, and over their affairs and officers he

exercised almost, if not quite, unlimited control, said officers yielding implicitly to his management; that said banks suspended on the 16th day of April, 1896, in a hopelessly insolvent condition, and would not pay 25 cents on the dollar of their indebtedness, the said First National Bank being placed in the hands of a receiver, and the Liberty Savings Bank making a deed of assignment for the benefit of its creditors; that the said T. D. Berry and his firm, principally, if not wholly, by his instrumentality, had obtained from each of the institutions twice as much as their capital stock, and that the said T. D. Berry knew, at least a month or two before the failure of these banks, that they were merely struggling for existence, and must inevitably come to naught; that with the deliberate intent to hinder, delay, and defraud his creditors, and particularly complainant, the nine several deeds of trust were executed, all made after the failure of said banks, when said Berry knew that he and his firm were hopelessly insolvent; that all parties interested in said deeds, including the trustees therein, had notice of the intent with which they were made, and that the negotiable notes attempted to be secured were given without consideration, and were not in the hands of bona fide holders,—said notes being intended for use, if at all, to place money in the hands of the grantor so as to defeat the claims of existing creditors. The defendant T. D. Berry filed his answer, denying fraud of all sorts in connection with the making of the several deeds mentioned, and any purpose to hinder, delay, and defraud his creditors in the execution of the same, or, indeed, to do anything fraudulent in connection with the making of said deeds and the securing of the debts severally, all of which he insisted were bona fide, and that the object and purpose of said several deeds were to prefer the creditors named in them, respectively, as he insisted he had a right to do, and he gave a detailed statement in his answer of his several debts thus secured and his transactions in reference to the same; that, as to the particular deed which is the subject of this appeal, the notes were made at the time of the execution of the deed, and given to the receiver of the First National Bank of Bedford City, to be delivered by him to Dr. S. H. Price, treasurer of Bedford county, for whose benefit they were drawn, the said Price to execute a paper, showing the facts in relation thereto; that said notes are still held by said Price; that said Price, as treasurer, had considerable money on deposit in said bank when it closed its doors, and that he (said T. D. Berry) felt under a moral obligation to protect said treasurer from loss by reason of said deposit as far as he could, and that said trust deed and notes were given for that purpose. Price filed his answer, averring that some time previous to the 1st day of April, 1896, rumors having been circulated as to the solvency of the said bank, he applied to Thomas D. Berry, its president, for information as to its financial condition, and was informed that the bank was solvent, and able to pay all its indebtedness; that, on account of such assurances on the part of said Berry, he continued to keep an account with said bank, and that on the 16th of April the bank was indebted to him in the sum of $5,551; that since the failure of the bank respondent has assumed and paid to the said county the full sum which he, as treasurer, had deposited in said bank, and that said debt was his individual property; that the said Berry executed and delivered the two notes aforesaid for the debt mentioned, as respondent had allowed his money to remain in the bank upon his (said T. D. Berry's) representations, and as there was a high moral obligation resting upon said T. D. Berry to secure respondent. Respondent denied all fraud in connection with the matter, and, on the contrary, averred that he knew nothing of the intention of said Berry to execute the notes and deed of trust until the same were actually executed and delivered; that they were made and delivered in good faith, for the debt aforesaid; and that the security furnished by said notes and deed of trust was wholly inadequate to pay the amount due, as the land conveyed would not sell for enough to pay the debt secured. In the lower court, so far as the subject of this appeal is concerned, the case was heard upon the bill, answer, and stipulation, admitting the truth of the statements contained in the answer of Price. The court sustained the several deeds mentioned, with the exception of the one for the benefit of the appellant Price, holding said deed to have been executed without valid consideration so far as the

109 F.—4

grantor, T. D. Berry, was concerned, for the reason that the debt secured was one due by the bank, and not by the grantor, and was therefore void as to plaintiff's debt. The said decree further directed how the receiver theretofore appointed should deal with the properties, and appointed a special master to ascertain and report the claims of the creditors, and their respective liens, and to take any other pertinent accounts.

M. P. Burks (Burks & Kemp, on the briefs), for appellants.

J. Singleton Diggs and W. R. Perkins, for appellee.

Before GOFF, Circuit Judge, and MORRIS and WADDILL, District Judges.

WADDILL, District Judge, after stating the case as above, delivered the opinion of the court.

The assignment of error presents for consideration a single question, namely, the correctness of the decision of the lower court in adjudging the deed in question to be invalid for lack of consideration. The appellee has raised a preliminary question, however, which will first be disposed of, namely, whether the said decree is a final one, and from which an appeal will lie. It is earnestly contended that no appeal lies, as the decree was merely interlocutory, and would not be final until the execution of the order of reference mentioned in the decree. This position may be conceded, so far as persons interested in the particular reference are concerned, but it cannot be seriously claimed that the appellants have any interest therein as the decree stands. So far as they are concerned, the purpose of the suit was to determine the validity of the deed in question. The court having declared it invalid, and entered a decree annulling the same, that decree as to them was a finality. It extinguished every interest they had in the subject-matter of the conveyance, and from it, and no subsequent decree, directing how the property should be disposed of between other persons, or the taking of accounts in reference to the property between them, should they appeal. In re Farmers' Loan & Trust Co., 129 U. S. 206, 213, 9 Sup. Ct. 265, 32 L. Ed. 656; Central Trust Co. v. Grant Locomotive Works, 135 U. S. 207, 225, 10 Sup. Ct. 736, 34 L. Ed. 97; McGourkey v. Railroad Co., 146 U. S. 536, 13 Sup. Ct. 170, 36 L. Ed. 1079; Sanders v. Improvement Co. (C. C. A.) 106 Fed. 587.

The right of the defendant T. D. Berry, under the law of Virginia as it existed at the time of this transaction, to prefer his creditors one over another, if such preferences were made in good faith and for a valid consideration, is no longer an open question, under the decisions, state and federal. Peters v. Bain, 133 U. S. 670, 686, 10 Sup. Ct. 354, 33 L. Ed. 696; Dance v. Seaman, 11 Grat. 778; Brockenbrough v. Brockenbrough, 31 Grat. 580; Young v. Willis, 82 Va. 291, 293. And in a case like the one in hand, where it is clear from the admitted facts that the trustee in the deed, as well as the beneficiary therein, had no notice even of its execution, there can be no doubt of the validity of the deed, if made to secure a valid obligation. The fact of insolvency on the part of the grantor in no way affects the validity of the deed. This right an insolvent debtor had at common law. Huntley v. Kingman, 152 U. S. 527, 14 Sup.

Ct. 688, 38 L. Ed. 540; Talley v. Curtain, 4 C. C. A. 182, 54 Fed. 43. Indeed, although the effect of the deed may be to delay creditors, if the transfer were made in good faith, with the intention to pay the preferred creditor and without any secret trust, it was valid. Crawford v. Neal, 144 U. S. 585–595, 12 Sup. Ct. 759, 36 L. Ed. 552. Was there, then, a valid consideration for the debt secured by Berry in favor of Price? The decision of the lower court was that no such consideration existed; that, while Berry could make preferences as between his own creditors, he could not prefer in favor of the bank's creditors; and that the debt preferred was an indebtedness of the bank, and not his own. This position is undoubtedly true, unless the defendant Berry, by reason of his connection with the bank, and his dealing with the appellant Price, placed himself in such position as to become liable individually for this portion of the bank's indebtedness. Appellant Price earnestly insists that such liability exists, and that he could have maintained an action of fraud and deceit individually against said T. D. Berry, and have recovered the amount left by him on deposit in the said bank. He also contends that, by reason of said T. D. Berry's conduct as an officer and a director of said bank, in himself using and allowing to be used practically the whole assets of the bank, which resulted in its downfall, he became liable individually to a creditor of the said bank, and on that account the preference in his favor was proper, and that there existed a valid consideration for the execution of the notes in his favor as well at common law as by the federal statutes. U. S. Rev. St. sections 5200, 5239. If either of these positions taken by appellant can be maintained, it would seem that the preference made in his favor of the debt due him is a valid one. If there were an adequate legal consideration for the promissory notes, it does not affect their validity that the motive which induced Berry to give them, and to secure in preference to other debts, arose from his feeling of moral obligation to Price. Philpot v. Gruninger, 14 Wall. 570, 20 L. Ed. 743.

This brings us to the consideration of the circumstances under which the appellant Price allowed his money to remain in bank, in order that it may be ascertained whether, upon the facts in this case, a legal liability exists against the defendant T. D. Berry for the amount so on deposit. The case was heard upon bill and answer. No evidence was taken, but by stipulation it was agreed "that the statements contained in the answer of S. H. Price could be accepted as true, without the necessity of taking depositions to sustain them." From the uncontradicted statements of the bill and answer, it will appear that the said Berry had placed himself in such position, in reference to the deposit of Price, that he should, at least, from every consideration of justice and fair dealing, desire to properly secure him. Price had undoubtedly sustained a loss as a result of his (Berry's) false statements of an existing fact peculiarly within his knowledge, and in reference to a matter in which Price relied, and had a right to depend, upon his statements. Berry was the factotum of the bank, and he should undoubtedly be held liable to one injured for the consequences of his false

statements, unless there is some rule of law that would be clearly violated thereby. There is no suggestion of any collusion between Berry and Price to secure this debt. Berry was thoroughly conversant with the condition of the bank, was its president, and exercised almost, if not quite, unlimited control of its officers; they yielding implicitly to his management. The appellant Price was a large depositor as treasurer of Bedford county, and applied to Berry, as the head of the institution, within the period of time it is, in effect, admitted that he knew of the bank's insolvent condition, for information as to its financial strength, and was assured by him that it was solvent, and was able to pay its indebtedness, which statement was falsely and fraudulently made, as Berry himself at the time had already wrecked the bank. These assurances Price accepted, and allowed his money to remain in the bank, by reason whereof the loss was sustained, and he had personally to make good the sum lost by the county, of which he was the treasurer. Appellee insists that the appellant Price should not be allowed to collect his notes given by Berry to secure a loss sustained by his false statement thus made, and that the notes, as well as the deed of trust securing the same, should be annulled and set aside for lack of consideration, and that no legal liability attached to Berry by reason of the misrepresentations made by him as to the condition of the bank, because the same were not in writing, and therefore invalid under the statute of frauds. Code Va. (Ed. 1887) § 2840. Moreover, that the statute of frauds applies to misrepresentations made by an officer or director concerning his corporation.

Clark, Cont. § 64, defines "consideration" as "something having value in the eye of the law. It may consist either in some right, interest, profit, or benefit accruing to one party, or some forbearance, detriment, loss, or responsibility given, suffered, or undertaken by the other"; or, to express it in fewer words, as earnestly insisted by the learned attorney for the appellants, "some benefit of the promisor, or some loss or injury or inconvenience to the promisee." Berry may not have received any benefit. It is sufficient if Price suffered any loss, injury, or inconvenience in consequence of the misrepresentations made by Berry, for which Berry is legally liable. That such loss was sustained by the latter by reason of the misrepresentations of the former is beyond question.

As to whether, in order for Price to maintain an action for fraud and deceit on account of the false statement made by Berry under the circumstances, any writing was necessary, is a question upon which the authorities are somewhat at variance, and, in the view we take of this case, it is not necessary to rest our decision upon this point, or, indeed, to pass upon it; this being neither an action to charge the promisor on any promise made, or for fraud and deceit in any statement made in connection therewith. The theory upon which a writing is held to be unnecessary, in order to maintain such an action, is that the gist of the action is the fraud and deceit in fraudulently making a false statement as to an existing fact, whereby another is prejudiced and sustains a loss, and it is not based upon any right of recovery on an agreement whereby one

person undertakes to become liable for the debt of another. The leading English cases upon the subject are Pasley v. Freeman, 3 Term R. 51; Haycraft v. Creasy, 2 East, 92. The former case is also reported in 2 Smith, Lead. Cas. p. 102, in the note to which many authorities, English and American, are to be found. The case of Upton v. Vail, 6 Johns. 181 (also reported in 5 Am. Dec. pp. 210–212), contains a note (in the latter book) of interest, citing many American authorities. In 14 Am. & Eng. Enc. Law, p. 32, the author says, referring to the statute of frauds:

"The fact that false representations are made in connection with a contract which the general statute of frauds requires to be in writing does not render it necessary that such representations shall be in writing in order that they may sustain an action of deceit, or be relied upon as a ground for rescinding the contract."

In support of this decision many authorities are cited. In referring to the clause of the statute requiring agreements to be in writing, the same author, in a note supported by many decisions, says:

"This clause of the statute, however, in terms, applies to agreements only, and it is settled, both in England and the United States, that it does not require writing to sustain an action of deceit for false representations of another's credit or standing."

Can the statute of frauds be availed of by the president of a bank to protect him from liability arising from a false and fraudulent statement made by him of an existing fact within his knowledge in reference to the condition of his bank? Mr. Thompson, in his valuable work on Corporations (section 446), commenting on a Massachusetts case so holding, says: "The statute, as thus construed, is justly styled a statute of frauds, because it is a statute tending, not to suppress, but to produce and encourage, frauds, and as such is disgraceful to an enlightened system of jurisprudence." Hess v. Culver, 77 Mich. 598, 43 N. W. 994, 6 L. R. A. 498; Westervelt v. Demarest, 46 N. J. Law, 37; Cowley v. Smyth, 46 N. J. Law, 380. The last case is an exceedingly interesting one, and contains many of the authorities bearing on this subject. Officers and directors of a bank should be held to a strict liability in this regard. They occupy a fiduciary relation, and know that their depositors have a right to at least assume that they are familiar with the bank's condition, and they ought not to be allowed to plead their own neglect and ignorance to protect them from the consequences of their own false statements when another has innocently suffered thereby, unless they have clearly acted in good faith, and themselves been deceived. In this case there is no question as to the false and fraudulent statement made by Berry, the bank's president, and he does not seek immunity therefrom, but, on the contrary, admits his liability, and another, a corporation, and a creditor of his, is seeking to avail itself of a possible defense that he, it is claimed, might make. It will be observed that the appellants have brought no suit. They are defendants in a suit brought by the appellee,—a suit in equity by another creditor of the said Berry, seeking to cancel and annul a trust deed and promissory notes recognizing the existence of the

liability Berry had incurred in connection with the bank of which he was president. The statute of frauds does not declare that there shall be no liability, nor does it undertake to invalidate any contract which is inhibited by the statute, or, which is made to fulfill the liability created by the false representations within the statute. It declares merely that no action shall be brought. 8 Am. & Eng. Enc. Law (1st Ed.) pp. 658, 659; Cochran v. Ward, 5 Ind. App. 89, 29 N. E. 795, 31 N. E. 581, s. c. 51 Am. St. Rep. 229, 237, and note.

Assuming that the statute of frauds can be pleaded by Berry, it is a matter personal to him, and cannot be availed of by another, as is attempted here. In Browne on the Statute of Frauds (section 128), it is said that it "is generally the privilege of the party from whom it [the representations] proceeded, and that it cannot in any way avail his adversary or any third party"; and in section 135 of the same work it is stated:

"As the statute of frauds affects only the remedy upon the contract, giving the party sought to be charged upon it a defense to an action for that purpose, if the requirements of the statute be not fulfilled, it is obvious that he may waive such protection, or, rather, that, except as he undertakes to avail himself of such protection, the contract is perfectly good against him. A third party cannot, in a case where his own obligations, growing out of the existence of the contract in question, are concerned, deny the obligation of the contract upon the party who was to be charged thereby, or take any benefit of the protection which such party could claim in an action brought upon it against himself."

Many authorities are cited in support of the text. 8 Am. & Eng. Enc. Law (1st Ed.) 659, 660.

Counsel for the appellants, in their brief, cite quite an array of authorities in support of the position taken by them that Berry was individually liable to the appellant as a depositor in the bank by reason of his conduct as an officer and director in the management of said institution, in that he practically appropriated to himself all of the assets, and that on that account a sufficient consideration existed for the execution of the notes in question. Among the authorities are Thomp. Corp. §§ 3139–4144, 4152; Seale v. Baker, 70 Tex. 283, 7 S. W. 742; Marshall v. Bank, 85 Va. 676, 8 S. E. 586, 2 L. R. A. 534; Briggs v. Spalding, 141 U. S. 132, 11 Sup. Ct. 924, 35 L. Ed. 662; Cockrill v. Cooper, 29 C. C. A. 529–534, 86 Fed. 7; 17 Am. & Eng. Enc. Law, 115, 116. We have not thought it necessary to examine in detail these authorities, or, indeed, to pass in review specially upon this phase of the case, as, in our view, for the reasons already given, there clearly existed a valid consideration for the notes executed in behalf of the appellant, and therefore the said notes, and the deed securing the same, executed in his favor, should be declared valid.

The decision of the lower court will be reversed, and a decree entered, remanding the cause, to be proceeded with therein to a final decree in accordance with the views herein expressed. Reversed.