## THE NEW HAVEN.

(District Court, D. Connecticut. March 19, 1908.)

No. 1,566.

SALVAGE—RIGHT TO COMPENSATION—BENEFICIAL RESULT OF SERVICE.

The action of libelants in fastening an overturned coal barge which had drifted ashore at high tide during a gale, which caused the tide to rise to an unusual height, by small lines attached to objects on shore, *held* not to amount to a salvage service which would sustain a libel for compensation, it appearing from the evidence that the barge was firmly imbedded in the sand, and held there by its oak bitts, and was in no danger of being moved by the elements.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Salvage, § 12.

Awards in federal courts, see notes to The Lamington, 30 C. C. A. 280.]

In Admiralty. Suit for salvage.

E. P. Arvine, for libelants.
James J. Macklin, for claimant.

PLATT, District Judge. It is elementary law that the right to salvage depends solely upon the consideration that property has been saved to the owner from maritime peril by the salvor. It must appear that, except for the voluntary services of the libelants, the property here in question would have been lost. It is a coal barge of the well-known type, and needs no detailed description.

It was shown at the hearing that on December 23, 1907, a heavy storm struck a tow of barges which included the one we have to do

with. The tow was broken up, several of the barges were sunk, and one barge, the John McCarthy, was overturned and drifted bottom up, close upon the shore, near Ames Point at Woodmont, Conn. It struck about 1 o'clock p. m., which was near high tide. The direction of the gale had caused the tide to rise at least a foot higher than the average, and therefore the barge was thrown considerably further upon the shore than would have been the case at the ordinary high tides. She had carried about 600 tons of soft coal, but, after being upset, substantially all the cargo had been shaken out into the waters of the Sound. When she struck she became thoroughly imbedded in the sand, and was firmly held there by oak bitts, which were oval in shape, 14 inches in diameter at the thickest part, and projected some 2 feet above the line of the deck. The libelants of course did not know this, and took what they deemed to be proper precautions to prevent the barge from drifting away upon the Sound during the night. These consisted of going out to the upturned barge about 3 o'clock in two 15-foot boats and screwing a ringbolt into one of the inshore corners of the barge, to which they attached a small rope less than an inch in diameter, and carrying the same to the shore, took a hitch around a rather frail looking apple tree trunk, and, 10 feet further along, around a barbed wire fence post. After dark two of them went out again to the barge, screwed another ringbolt into the other inshore corner, and fastened a little larger rope to the ringbolt and then around a boulder on the shore. If a severe offshore gale had sprung up during the night, and the barge at high water had been entirely free from the bottom, these ropes would not have prevented her from being driven out to sea, but the fact is that the night was of that calm and pleasant kind which usually follows a boisterous gale. The libelants tried to satisfy the court that the barge shifted her position during the night from 60 to 80 feet. The libel was filed on December 27th, and no hint at such an important fact can be found in its articles. The testimony is manifestly an afterthought introduced to save their case. They also say that the seaward end was afloat at a date, when, by the evidence, it is clear that her entire length was imbedded in the sand.

I am satisfied from the evidence that there was never a minute after the barge was set, by the unusually high tide, far up on the shore Monday afternoon, when there was the slightest danger of her being dashed upon the rocks or driven out to sea. This being so, the libelants, though meaning well, no doubt, did nothing whatever which benefited the claimant owner.

Let a decree be entered dismissing the libel, with costs to the claimant.