BARNETT & RECORD CO. v. WINEMAN.

(Circuit Court of Appeals, Seventh Circuit. November 15, 1912.)

No. 1,907.

SALVAGE (§ 39*)—SUBJECT-MATTER—SALVAGE SERVICE UNDER CONTRACT.

The agent for a stranded barge called upon the manager of a towing company, with which the owner had a general contract for towage, to send a lighter to the assistance of the barge, and on being told that the towing company had none available requested that one be procured, and the manager procured one with a tug, to be sent by libelant to report to the master of the barge. Libelant afterward sent another tug and barge on like request, and both rendered service in lightering and rescuing the barge, under direction of her master. Libelant had no knowledge of the contract with the towing company, but made out its account against the barge. *Held*, that the service was in effect rendered at request of the owner or master, and was a salvage service under contract, for the reasonable value of which libelant was entitled to a maritime lien.

[Ed. Note.—For other cases, see Salvage, Cent. Dig. §§ 103, 104, 108; Dec. Dig. § 39.*]

Appeal from the District Court of the United States for the Western District of Wisconsin; A. L. Sanborn, Judge.

Suit in admiralty by the Barnett & Record Company against the barge Aurora; Henry Wineman, Jr., owner. Decree for respondent, and libelant appeals. Reversed.

For opinion below, see 194 Fed. 559.

This appeal is from a decree in admiralty, on final hearing of the issues, dismissing the appellant's libel in rem filed against the barge Aurora, for quantum meruit recovery for the services of two tugs and two lighters, engaged in lighterage of cargo for release of the Aurora, which was stranded on the north shore of Lake Superior, with her towing steamer. The facts involved are stated in the opinion.

H. R. Spencer and Alexander Marshall, both of Duluth, Minn., for appellant.

Holding, Masten, Duncan, & Leckie, of Cleveland, Ohio, for appellee.

Before SEAMAN and KOHLSAAT, Circuit Judges, and CARPENTER, District Judge.

SEAMAN, Circuit Judge. The libel filed by the appellant, the Barnett & Record Company, against the barge Aurora avers performance of salvage services, requested on behalf of the barge to aid in her release from stranding. On final hearing of the testimony under the issues, the trial court dismissed the libel, pursuant to an opinion or finding filed therein "that the maritime law gives no lien" under the circumstances in evidence; and this ruling presents the primary question for review.

The material facts upon which the libel rests are undisputed. About midnight, on May 28-29, 1910, the steamer City of Berlin, with the barge Aurora in tow, both wooden vessels laden with coal and bound

for Duluth or Superior, stranded in a fog on the north shore of Lake Superior, in the vicinity of Split Rock, about 47 miles from the port of Duluth. Both vessels were owned by the claimant, who resided at Detroit, and the masters sent a messenger to Two Harbors to telephone the owner for instructions. Communication was obtained, and pursuant to direction of the owner the messenger notified the owner's agent at Duluth, G. A. Tomlinson, that they "wanted the assistance of the Great Lakes Towing Company to wreck her." Tomlinson called up Vroman, manager of Union Towing & Wrecking Company, the Duluth branch of the above-mentioned company, and arranged to have a wrecking tug and pump sent immediately. Subsequently Tomlinson notified Vroman that "they wanted a lighter." Vroman replied:

"We didn't have any, but I thought I could get one."

Tomlinson then said "they wanted one," and Vroman called up the libelant's manager, explained the service required, and requested dispatch of tug and lighter to the stranded vessels, to report to their masters for directions. In response to this information and request. the one equipment of tug and lighter was promptly sent out, and another tug and lighter were dispatched later on like request. Each reported to the master of the Aurora and served under his directions in lightering of the cargo. Confusion appears in the testimony in reference to the particular time when Tomlinson ordered the lighter; but the facts are uncontroverted, both in respect of his direction to Vroman, as above stated, and of the need of the service performed by the libelant.

Thus the service in controversy was strictly maritime in its nature, rendered to "save the vessel and cargo from the perils of the seas," presumptively upon the credit of the ship, if called for on its behalf, with or without the intervention of the owner in the employment. The Kalorama, 10 Wall. 204, 214, 19 L. Ed. 941. If so rendered, upon request, express or implied, of the master or owner, it was salvage service of the well-recognized class for which compensation is "payable at all events" for the reasonable value of the service (The Elfrida, 172 U. S. 186, 192, 19 Sup. Ct. 146, 43 L. Ed. 413), and enforceable in rem as a maritime lien. It is unquestionable, however, that the libel presents no case of pure salvage, to authorize recovery for the services of a mere volunteer in the release of the stranded barge, so that contractual obligation on the part of the vessel is the final test of right to a lien.

The contentions in support of the decree against the libelant are, in substance: (a) That the lighterage equipment and service were engaged by Vroman, as manager of Union Towing & Wrecking Company, and were employed thereby throughout the service and not on behalf of the barge; (b) that Vroman's company was bound by contract with the vessel owner to furnish such lighterage service; and (c) that no lien was created in favor of such subcontractor. We believe neither of these propositions to be tenable under the evidence for denial of the lien. Were the question involved whether a subcontractor may or may not have the benefit of a lien for maritime service performed, at the instance alone of a contractor with the master or

owner, when timely notice of the claim is given to the owner (see The Roanoke, 189 U. S. 185, 195, 23 Sup. Ct. 491, 47 L. Ed. 770), it may be that the solution would not be free from difficulty; but we are of opinion that no such relations in the service appear between the parties respectively.

The testimony, as above mentioned, shows that the requisition for lighters to be sent to the stranded vessels came from Tomlinson, agent for the vessels at Duluth, who directed Vroman to procure them elsewhere, when informed that Vroman's company had no such equipment. It does not appear how Tomlinson was notified of the need of such service, but without proof it may well be presumed that he was so instructed by his principal, either the master or owner; and their order, accordingly, was merely communicated to the libelant by Vroman, as their mouthpiece. Not only was the entire lighterage service thereupon performed under the directions of the master of the Aurora, after the tugs and lighters reported to him for service, but the master knew that they were owned and operated by the libelant and not by Vroman's company. Furthermore, the libelant entered upon and performed the service in the belief that it was requested on behalf of the vessel, with no understanding of the alleged contract relation between the owner and Vroman's company; promptly rendered to the owner its account for such services against the Aurora, followed up by monthly statements, with no question as to liability therefor raised or intimated up to the filing of the libel, which was delayed nearly a year; and letters in evidence from the owner contain repeated promises of attention to the claim, excusing the postponements through difficulty in adjustment of "the general average claim."

We are of opinion that the above-mentioned circumstances are, to say the least, presumptive of liability for the services, even under the contention on behalf of the appellee that the master accepted the services, at the outset, without knowledge that they were independent of the services rendered by the Union Towing & Wrecking Company. The fact that the vessel agent ordered Vroman to obtain lighters elsewhere, when informed that Vroman's company had none, is sufficient prima facie proof of their employment by the master or owner on the credit of the vessel; and no rebuttal of this presumption appears in the testimony. The defense relied upon is a contract (introduced under objection) between the vessel owner and the Great Lakes Towing Company for services during the season, together with the above-mentioned fact that Vroman communicated the order for the lighters after the employment of his company as the alleged representative of the Great Lakes Towing Company at Duluth. Laying aside the objection raised to the contract referred to, as made with a stranger to the controversy, no provision thereof appears in the record which can affect the issue as to the employment of the libelant. It does not purport to require the contracting party to furnish lighters or lighterage service at Duluth, nor at any port where it had no lighters; nor is there evidence either of express contract on the part of Vroman's company to furnish lighterage service, or of claim on its behalf, directly or indirectly, for the service performed by the libelant. Error, therefore,

is well assigned for dismissal of the libel, and the decree must be reversed.

The reasonable value of the services in suit is established by the evidence at the sum of $2,561.25, and the libelant is entitled to a decree for recovery of that amount, with interest.

The decree of the District Court is reversed accordingly, and the cause is remanded, with direction to enter decree therein as above stated, together with costs in favor of the libelant.