GREAT LAKES TOWING CO. v. ST. JOSEPH-CHICAGO S. S. CO.

(Circuit Court of Appeals, Seventh Circuit. August 22, 1918. Rehearing Denied October 14, 1918.)

No. 2465.

1. ADMIRALTY ⊜103—APPEAL—FINAL DECREE—WHAT CONSTITUTES.

Where the owner of a vessel, which had capsized and sunk after contracting with appellant to raise the same, filed a petition for limitation of liability, and appellant's petition therein for a preferred lien was denied, *held*, that the decree was final as to appellant, and appealable.

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. SALVAGE ⬡⟶11—SALVAGE SERVICE—WHAT CONSTITUTES.

The raising of a sunken vessel, which lay at the bottom of a narrow and much-traveled and navigable stream, was a salvage service, entitling the salvor to a prior lien, enforceable in rem, whether it was rendered under contract or not, or the vessel was in danger, etc.

3. SALVAGE ⬡⟶40—LIEN—PRIORITY.

Maritime liens arise from many kinds of acts, and priority is determined by the rank of benefits conferred; so one who raised the sunken vessel is entitled to priority over other claimants and the owner.

4. SALVAGE ⬡⟶11—LIEN—CONTRACTS.

Where a towing company undertook to raise and deliver a sunken steamer for $34,500, "no cure, no pay," and there was no showing of fraud in the contract, or that the personal credit of the owner was relied on, etc., the towing company is entitled to a lien for the contract price.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Libel and petition by the St. Joseph-Chicago Steamship Company for limitation of liability, in which the Great Lakes Towing Company and others file claims. From a decree denying the motion of the Great Lakes Towing Company that its claim be decreed a preferred and first lien, it appeals. Reversed.

Harvey D. Goulder and Thomas H. Garry, both of Cleveland, Ohio, for appellant.

Harry W. Standidge and Charles E. Kremer, both of Chicago, Ill., for appellees.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

BAKER, Circuit Judge. On July 24, 1915, the steamship Eastland, owned by the St. Joseph-Chicago Steamship Company, of St. Joseph, Mich., and chartered to and operated by the Indiana Transportation Company, capsized and sank in the Chicago river. Many passengers were drowned and others injured.

Three days later the Great Lakes Towing Company, appellant, contracted with the steamship company "to raise and deliver said steamer, righted and pumped out, to a dock in the vicinity of where she now lies, for $34,500; no cure, no pay." Appellant's undertaking was fully performed.

This cause was begun in the District Court by the steamship company's filing of a libel and petition for limitation of liability. A trustee was appointed and took possession of the steamer; an order was entered, restraining the prosecution of claims, except in the limitation proceedings; and a monition was issued, citing all claimants to appear. Appellees, other than the steamship company, are tort and supply claimants.

Appellant filed an answer denying the steamship company's right of limitation, and also a petition asking that appellant's claim for services in raising the steamer be declared and enforced as a "preferred, paramount, and first lien." It was stipulated that there were no other claims of that class.

⬡⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Afterwards the court sold the steamer for a sum which would go but a little way toward satisfying all the claims. Thereupon appellant filed a motion that it be first paid out of the proceeds. Tort and supply claimants resisted appellant's petition and motion, and a hearing resulted in a decree:

"That said Great Lakes Towing Company is not entitled to the relief prayed for by it in its said petition and motion to have its said claim decreed a preferred, paramount, and first lien on said steamer or the proceeds thereof, and it is ordered that said prayer of said petition be and the same is hereby denied."

Hence this appeal.

[1] 1. Motion to dismiss: Appellees contend that the decree is merely interlocutory, because appellant's petition was not in terms finally dismissed, and because appellant may hereafter be granted an allowance for its services as an unsecured claim or on an equal footing with appellees. But the only relief sought by appellant's petition was the enforcement of an asserted prior lien. By the limitation proceedings appellant was forbidden to file an independent libel, and was constrained to intervene in this case. The San Pedro, 223 U. S. 365, 32 Sup. Ct. 275, 56 L. Ed. 473. Appellant's intervening petition was in its essence an independent libel to declare and enforce a paramount maritime lien; and though the controversies between the steamship company and the tort and supply claimants were left pending, and though appellant's right to allowance of an unsecured claim, if appellant should care to present such a claim, was not cut off, nevertheless the decree denying the only relief sought by the intervening petition was in its effect upon the asserted lien the same as a formal and final decree dismissing an independent libel. Gumbel v. Pitkin, 113 U. S. 545, 5 Sup. Ct. 616, 28 L. Ed. 1128; Potter v. Beal, 50 Fed. 860, 2 C. C. A. 60; Sanders v. Bluefield Water Works, 106 Fed. 587, 45 C. C. A. 475; The Attualita, 238 Fed. 909, 152 C. C. A. 43. Motion to dismiss is overruled.

[2] 2. Has appellant a paramount lien?

Appellees contend that appellant rendered no salvage service. Confessedly appellant did not go out in a tempest, at great risk to its own vessels and crews, in a voluntary effort to save the Eastland from imminent perils of the sea. What appellant did was to raise and pump out the sunken steamer under a "no cure—no pay" contract with the owner. Work of this character, appellees insist, is not salvage service. From the syllabus of Merritt & Chapman Derrick & Wrecking Co. v. Morris & Cummings Dredging Co., 137 Fed. 780, 70 C. C. A. 356, they quote:

"The raising of a dredge sunk in shallow water, where there is no danger involved, nor any extraordinary means required or employed, is not a salvage service."

And additionally they cite The Paul L. Bleakley (D. C.) 146 Fed. 570; The S. C. Schenk, 158 Fed. 54, 85 C. C. A. 384; The New Haven (D. C.) 159 Fed. 798.

Whether service is rendered voluntarily or under contract does not affect the character of the service. The Elfrida, 172 U. S. 186, 19

Sup. Ct. 146, 43 L. Ed. 413. That the expression "perils of the sea" must not be taken literally is illustrated in The Jefferson, 215 U. S. 130, 30 Sup. Ct. 54, 54 L. Ed. 125, 17 Ann. Cas. 907, wherein service in protecting a vessel undergoing repairs in a dry dock from a fire on the shore was held to be salvage. Cases of The Tornado, 109 U. S. 110, 3 Sup. Ct. 78, 27 L. Ed. 874, The Elfrida, supra, The Stanley H. Miner (D. C.) 172 Fed. 486, and Barnett & Record Co. v. Wineman, 202 Fed. 110, 122 C. C. A. 222, indicate that service in raising, pumping out, and restoring to commerce stranded and sunken vessels, in no immediate peril of destruction, and without the employment of means or the incurring of hazards beyond those necessary to the undertaking is salvage; and we think it must necessarily be so. In the present case the Eastland lay at the bottom of a navigable river, narrow and much traveled. She was an obstruction to navigation, a danger to herself and all passing vessels. Our judgment is that appellant's service in raising and restoring her to use was salvage, creating a property right, enforceable by process in rem.

[3] But, after all, it is unnecessary that appellant's service be defined as salvage. Maritime liens arise from many kinds of acts and services, and priority is determined by rank of benefits conferred. The John G. Stevens, 170 U. S. 113, 18 Sup. Ct. 544, 42 L. Ed. 969. Appellees' liens, if any they have, attached to the Eastland as she lay on the bottom of the river at the end of her voyage. Appellees, as well as the owner, were benefited by appellant's service, and their claims are therefore subordinate.

[4] Nothing in evidence tends to show collusion, fraud, or duress in the execution of the "no cure—no pay" contract, or that appellant accepted the personal credit of the owner in lieu of its right to an interest in the vessel. Though some of the appellees in their pleadings challenged the amount of the consideration, they offered no evidence to prove that it was unfair. Recovery must therefore be for the contract price. The Elfrida, supra.

Since it affirmatively appears that appellant's claim is the only one of the preferred class, there is no reason for delaying payment.

The decree is reversed, with direction to allow appellant's claim, with interest and costs.