HUDSON et al. v. RANDOLPH.

(Circuit Court of Appeals, Fifth Circuit. November 27, 1894.)

No. 210.

1. EQUITY—JURISDICTION—SUIT TO RECOVER POSSESSION OF LAND.

While a suit in equity cannot be maintained by the holder of a legal title to recover possession of land, though coupled with a demand for an accounting as to rents and profits, or for the removal of clouds upon the title, yet, where the bill presents a case of fraud or mistake, or sets up a right to redeem from a mortgage, and it appears that the complainant has not an adequate and complete remedy at law, it may be maintained and possession of the land may be decreed.

2. EQUITY PLEADING—PLEA.

A plea to a bill in equity which states nothing but conclusions of law, and which goes to the whole bill, but is accompanied by an answer to the whole bill, is properly disregarded.

3. EQUITY PRACTICE—AMENDMENT OF ANSWER.

The granting of leave to amend an answer, after a master's report has been filed, and the cause heard on exceptions thereto, is wholly within the discretion of the court.

4. RECORD OF DEEDS—WHAT CONSTITUTES—TEXAS STATUTE.

The statutes of Texas (Sayles' Civ. St. arts. 4299, 4334) provide that "every instrument * * * shall be considered as recorded from the time it was deposited for record. * * * Every conveyance * * * acknowledged * * * according to law, and delivered * * * to be recorded, shall take effect * * * from the time when such instrument shall be so acknowledged * * * and delivered * * * to be recorded, and from that time only." Held that, under these statutes, the filing of a deed or mortgage for record, and not the subsequent actual recording of the same, constitutes the constructive notice to third persons contemplated by the statute; and that, accordingly, an error of the recording officer in copying the description in a deed or mortgage does not nullify its effect as notice.

5. PRINCIPAL AND AGENT — WHEN PRINCIPAL NOT CHARGEABLE WITH AGENT'S KNOWLEDGE.

Where an agent and parties dealing with him have colluded for fraudulent purposes, the principal is not bound by uncommunicated knowledge of the agent. Investment Co. v. Ganzer, 11 C. C. A. 371, 63 Fed. 647, followed.

Appeal from the Circuit Court of the United States for the Northern District of Texas.

This was a suit by L. V. F. Randolph against C. P. Hudson and the Scottish-American Mortgage Company, Limited, for the recovery of land, an accounting, and other relief. The circuit court rendered a decree for the complainants. Defendants appeal.

Lauch McLauran and W. B. Gano, for appellant.

Girault Farrar and W. S. Simkins. for appellees.

Before PARDEE, Circuit Judge, and LOCKE, District Judge.

PARDEE, Circuit Judge. The appellant C. P. Hudson assigns as error in the proceedings in the circuit court that the court overruled the demurrer to the complainant's bill, contending that, on the face of the bill, the court was without jurisdiction in equity to grant relief. If the bill is viewed purely as one brought by the holder of the legal title to real estate against parties in pos-

session, to recover possession with rents and profits, and to remove clouds from title, the assignment of error is well taken. It has been settled since Hipp v. Babin, 19 How. 271, that the holder of a legal title cannot maintain an action to recover possession of the property, although coupled with a demand for an accounting as to rents and profits. It is also settled that the holder of a legal title out of possession cannot maintain a suit in equity in the courts of the United States against one in possession, to recover the property and to remove clouds from the title. Whitehead v. Shattuck, 138 U. S. 146, 11 Sup. Ct. 276. See, also, Scott v. Neely, 140 U. S. 106, 11 Sup. Ct. 712; Cates v. Allen, 149 U. S. 451, 13 Sup. Ct. 883, 977. But it is also settled that in cases of fraud, error, or mistake, presenting a case for equitable relief within the generally recognized rules of equity, the court is not ousted of jurisdiction, because the complainant may have a remedy at law, unless that remedy at law is complete and adequate. Kilbourn v. Sunderland, 130 U. S. 505–515, 9 Sup. Ct. 594; Gormley v. Clark, 134 U. S. 338–349, 10 Sup. Ct. 554; Tyler v. Savage, 143 U. S. 79–95, 12 Sup. Ct. 340. In Kilbourn v. Sunderland, supra, the court, through Mr. Chief Justice Fuller, says, in relation to the case then in hand: " 'There cannot be any real doubt that the remedy in equity, in cases of account, is generally more complete and adequate than it is or can be at law' (1 Story, Eq. Jur. § 450); and, as the remedy at law in the case in hand was rendered embarrassed and doubtful by the conduct of the defendants, and fraud had in equity a more extensive signification than at law, and, as charged here, involved the consideration of the principles applicable to fiduciary and trust relations between the parties throughout the period of their connection, we concur with the supreme court of the district in sustaining the jurisdiction,"—all of which, we think, may be said of the matters presented by the bill in this case.

A careful scrutiny of the bill in this case, in the light of the subsequent pleadings and the admitted facts, shows a case where the complainant, although the holder of the legal title, and seeking to recover possession, rents, and profits, and to remove clouds from title, is also seeking discovery and an accounting as to a certain mortgage upon the property which, by the machinations of the defendants, has been merged, through an alleged fraudulent foreclosure, into a superior title, when in fact it is not a legal title, and, if anything, is a mortgage, upon which payments have been made, and under which the complainant, as the holder of the legal title, is entitled to redeem when the validity of the mortgage and the amount due thereon shall have been ascertained by proper discovery. It requires no difficult construction of the bill, in connection with that part of the prayer for an accounting of the amount due upon the mortgage to the Scottish-American Mortgage Company, Limited, and for a decree permitting the complainant to be allowed to redeem, to hold the complainant's bill to be a bill to redeem, as well as to recover possession and to remove clouds from title. As was said in Tyler v. Savage, supra, "Thus, there were in the case, as ingredients to support the jurisdiction of

equity, discovery, account, fraud, misrepresentation, and concealment," may be said in the present case. It seems only necessary to notice, further, that, in the light of the pleadings and facts in the case, it cannot be pretended that the complainant has an adequate remedy at law.

The appellant C. P. Hudson also contends that the court below erred in not granting his motion to take the document filed by him, in connection with his answer, and called a "plea," as confessed, and thereupon dismiss the complainant's bill. The so-called "plea" states nothing but conclusions of law, and is but a recapitulation of the grounds urged in the demurrer, overruled by the court, and, as such, was properly disregarded. In addition to this, it may be noticed that, considered as a plea, it went to the whole bill, and, under well-recognized rules of equity pleading, it was waived when the pleader filed an answer to the whole bill.

The appellant also complains that after the master's report, and when the cause had been heard upon exceptions thereto, but before the court had rendered a decree upon said exceptions, he asked for leave to amend his answer to the cross bill of the Scottish-American Mortgage Company, Limited, and also to amend his cross bill in the case, as per drafts tendered, which the court overruled and refused. As we understand the practice, the granting of leave to amend, coming at that stage of the case, was wholly within the discretion of the court. Further than this, we may say that we have considered the amendments proposed in behalf of C. P. Hudson, and, under the view we take of the case, the same are immaterial. On the evidence and admissions submitted in the cause, we conclude, as evidently did also the master and the judge of the court below, that the equities were entirely against the claims and demands of C. P. Hudson; and we further conclude, on the merits of the case, that the decree appealed from is in no respect erroneous, so far as C. P. Hudson is concerned.

The first question raised by the appeal of the Scottish-American Mortgage Company, Limited, is whether the complainant, Randolph, who acquired a lien on the lands in controversy August 15, 1885, is charged with constructive notice of a deed of trust executed by A. J. Hudson and wife to the Scottish-American Mortgage Company, Limited, on December 12, 1883, to secure the payment of a certain promissory note given by said Hudson, of even date with the trust deed, payable on the 12th day of December, 1888, to the order of the Scottish-American Mortgage Company, Limited, at the bank of Montreal, city of New York, for the sum of $5,000, with interest thereon at the rate of 11 per cent. per annum until fully paid. It is claimed by the complainant that although this deed of trust mortgaging the lands in controversy for the payment of the said note, and sufficiently describing the same, was duly executed, acknowledged, and proved, and was filed for record on December 19, 1883, and thereafter, on December 22, 1883, was recorded in the proper office of Johnson county, yet, as the record as made did not describe the lands in controversy, but was insufficient to describe any lands, the complainant was not charged with notice, constructive or otherwise,

of the said trust deed.    It seems that, although the trust deed deposited for record with the clerk of the county court of Johnson county contained a full and accurate description of the lands conveyed, yet the record actually made by the clerk by omitting part of one of the calls left the description vague and uncertain, if not meaningless.    The question is, therefore, squarely presented, whether, under the registration laws of the state of Texas, the filing of a deed or mortgage for record in the proper office, or the record made by the subsequent recording of the same, constitutes the constructive notice to third persons contemplated by the statute.

The statutes of the state of Texas bearing on the subject are as follows (Sayles' Civ. St. arts. 4299, 4334):

"Art. 4299. Record Takes Effect, When.  Certificate of.   Every such instrument of writing shall be considered as recorded from the time it was deposited for record; and the recorder shall certify under his hand and seal of office to every such instrument of writing so recorded, the hour, day, month and year when he recorded it, and the book and page or pages in which it is recorded; and when recorded deliver the same to the party entitled thereto or to his order."

"Art. 4334. Delivery of Deed to Clerk Operates as Notice.  Every conveyance, covenant, agreement, deed, deed of trust or mortgage in this chapter mentioned, which shall be acknowledged, proved or certified according to law, and delivered to the clerk of the proper court to be recorded, shall take effect and be valid as to all subsequent purchasers for a valuable consideration, without notice, and as to all creditors, from the time when such instrument shall be so acknowledged, proved or certified, and delivered to such clerk to be recorded, and from that time only."

The letter of these statutes seems to be very plain, and to leave little room for construction.   By article 4299, "every such instrument of writing shall be considered as recorded from the time it was deposited for record"; and by article 4334, "every," etc., "shall take effect and be valid  *  *  *  from the time when such instrument shall be so acknowledged, proved or certified, and delivered to such clerk to be recorded, and from that time only."

The ruling of the learned master in the circuit court, and the adoption of his ruling by the court, against the letter of these statutes, render it necessary to consider the adjudged cases in the supreme court of Texas where the matter in hand has been considered.

In Throckmorton v. Price, 28 Tex. 605, where the case showed that a deed of trust, duly executed and acknowledged, was delivered to the county clerk for record, but, at the time of the subsequent incumbrance, had not been recorded at all, the court held that every instrument is considered as recorded from the time it is filed for record; and that, by virtue of the registration laws, the filing of a deed for land with the county clerk for record is equivalent to the actual registration of the deed at the time it was so filed; and that a party filing his deed for record is not bound to see that the clerk performs his duty by actually recording it, nor is he responsible to other parties for the clerk's neglect of his duty, or failure to comply with the requirements of the statute with respect to the registration of the deed.

In Taylor v. Harrison, 47 Tex. 457, where the question was as to

the notice resulting from the record of a deed duly executed and recorded, but without the authentication required by law, the court held that while the record of a deed duly acknowledged or proved for record is, by the statute, notice to subsequent purchasers and creditors of such facts as they would have learned from the record had they examined it, yet the record of a deed duly executed and recorded, without the authentication, is imperfect; such omission being fatal to the effect of the registry, and such imperfect record not being notice. In this case, the court, without referring to Throckmorton v. Price, but evidently speaking only as to the case then before it, uses language to the effect that purchasers and creditors are only charged by construction with notice of the facts actually exhibited on the record, and not with such as might have been ascertained by such inquiries as an examination of the record might have induced a prudent man to make. And running through the opinion of the court is the proposition that constructive notice to purchasers and creditors arises from the record, rather than from the conveyance itself, when properly executed, proved, and filed for record.

In McLouth v. Hurt, 51 Tex. 115, where the question was what the actual record showed, there being no question as to any difference between the actual record and the deed filed for record, the court held, generally, on the question of registration, that registration is constructive notice only of what appears on the face of the deed as registered; but the same court, in the same volume of Reports, in the case of Fitch v. Boyer, Id. 336–349, cited Throckmorton v. Price with approval.

In Crews v. Taylor, 56 Tex. 461, which was a case in which a county clerk was sued with his sureties for damages for failure to record and index a certain mortgage which had been delivered for record, the court held the clerk liable to a subsequent purchaser in damages, holding, as to the matter in hand, that, as a matter of law, the depositing of a mortgage with the clerk for record from that time constituted constructive notice of its contents to all persons.

In Freiberg v. Magale, 70 Tex. 116, 7 S. W. 684, where the question was as to the validity of a chattel mortgage, the court held that:

"When the mortgage was properly deposited with the county clerk and filed, the duty of the mortgagee as to protecting creditors of the mortgagor, and purchasers and lien holders claiming under him, ceased, and he was not bound to see that the clerk performed his duty in making the entries and index required by the statutes; notice dating from the time the mortgage is filed, and not from the time the index and entries are made."

In the case of Cattle Co. v. Chisholm, 71 Tex. 523, 9 S. W. 479, where the question was with regard to the admissibility in evidence of the certificate of record of a deed which did not show the deed to have been properly recorded, while it was held that the certificate of record presented was properly excluded, yet the court also held that no question of notice was involved in the case, and that, upon a question of notice, the filing for record in the proper office is equivalent to proper registration; citing Throckmorton v. Price, supra.

In Bassett v. Brewer, 74 Tex. 554, 12 S. W. 229, where the question was whether a material man's indebtedness, verified in the form prescribed by law, took effect from the time it was filed for registration, the court approved the ruling in Throckmorton v. Price, and held that the material man's lien attached from the time it was filed for record, and, in relation thereto, said:

"Nothing more can be reasonably required of the person desiring to fix the lien by his registry than to deliver to the officer the sworn account of the demand due him to be filed and recorded. It is no part of his duty to see that the clerk does his by an actual record of it."

In Weber v. Morse, 21 S. W. 609, the court of civil appeals in Texas, construing article 4292 of the Revised Statutes of Texas, providing that, where county records are destroyed, deeds which are preserved shall be recorded within four years, in order that the first record shall be effective, held that, where said deeds are not so recorded after the destruction of the record, the first record does not constitute a notice as against a bona fide purchaser, and that if the record of a deed is partially destroyed, so as not to show that the deed was properly acknowledged for registration, such record does not charge subsequent purchasers with constructive notice of the deed, and, in reaching the conclusions mentioned, quotes from Taylor v. Harrison, supra, and speaks generally as though in all cases the question of notice was to be determined upon the actual record made by the clerk.

It is evident from the consideration of these cases that the construction of the registration law of Texas, as given in Throckmorton v. Price, supra, has not been departed from by the supreme court of Texas; and, considering the questions raised in the several cases, it is easy to harmonize the rulings and the language of the judges. At all events, Throckmorton v. Price has not been overruled, and we adopt the reasoning of Chief Justice Gould, as follows:

"But for the registration law, the older title would obviously convey the better right; and it is the uniform provisions of these laws that such instruments as must be recorded shall be valid as to all subsequent purchasers for a valuable consideration without notice, and as to creditors from the date when such instrument shall be properly acknowledged, proved, or certified, and delivered to the clerk for record, and from that time only. Oldh. & W. Dig. arts. 1726, 1727, 1730, 1731. And, lest there should be any doubt in the matter, it is further enacted that any instrument required to be recorded shall be considered as recorded from the time it was deposited for record with the clerk. Oldh. & W. Dig. art. 1709. And, to enable all persons who may wish to examine the office to ascertain what instruments have been deposited for record, it is also made the duty of the clerk (Oldh. & W. Dig. art. 1707), when any instrument has been deposited for record, to enter in alphabetical order in a book to be provided for that purpose, the names of the parties to such instrument, the date and nature thereof, and the time of its delivery for record. And, as a further facility and security for persons wishing to make an examination in the office of the recorder for instruments required by law to be recorded, the clerk, after recording any such instrument, is directed to enter the same in the index books which he is required to keep of recorded instruments. Oldh. & W. Dig. arts. 1710–1712. If the clerk has neglected to comply with these plain and simple requirements of the statutes, and appellees have been thereby misled to their injury, they cannot claim redress for such injury from appellants, who have been in no default. The law did not impose upon them the responsibility of seeing that the duties prescribed by the statute for the protection and security of other parties were in fact

faithfully discharged by the clerk.   Registration laws of a general similarity to ours have been enacted in most of the other states; yet we have been able to find no case in which the first deed has been postponed in favor of the second from the failure of the clerk to record the prior deed as directed by the statute, while the contrary has been frequently decided.   In Kentucky it is emphatically declared that deeds lodged for record are valid against subsequent purchasers and creditors. · Bank v. Haggin, 1 A. K. Marsh, 306. And in Connecticut it is said: 'If a deed, after it is received and entered up "Received for record," remain unrecorded, through no fault of the grantee, until an attachment of said land, it shall not prejudice the grantee.'   Franklin v. Cannon, 1 Root, 500; Hartmeyer v. Gates, Id. 61; McDonald v. Leach, Kirby, 72; Judd v. Woodruff, 2 Root, 298.   The same principle is also recognized in Alabama.   McGregor v. Hall, 3 Stew. & P. 397."

The next question presented is whether the lien given by the deed of trust to secure the payment of the $5,000 note, all as above described, has been paid or otherwise extinguished.   The evidence in the case fully warrants the finding that the attempted foreclosure of the said deed of trust before it became due, the pretended purchase by Simpson, the trustee, through Robertson, and the subsequent conveyance to C. P. Hudson, and all the doings in that behalf, were for the purpose of hindering, delaying, and defrauding Randolph in the collection of his claim against A. J. Hudson.   The natural result of setting aside and holding for naught the pretended foreclosure and the subsequent conveyances thereunder would be to reinstate the deed of trust held by the Scottish-American Mortgage Company, Limited, and leave the same, as it was before, a prior lien on the lands in controversy.

In this connection, it may be well to notice that one of the main grounds, if not the main ground, for setting aside the pretended foreclosure attempted by the trustee Simpson in 1886, is the want of authority on the part of the said Simpson from the Scottish-American Mortgage Company, Limited, to declare the principal of the note due, and proceed to the foreclosure.   The contention of the complainant in the court below, as well as that of the defendant C. P. Hudson in his cross bill, is that the Scottish-American Mortgage Company, Limited, although it had' no actual knowledge of the proceedings of Simpson, is, nevertheless, bound by the same, because a principal is bound by the acts and knowledge of his agent; and the complainant further claims that, as the proceedings in question were for the purpose of hindering, delaying, and defrauding him in the collection' of his demand against A. J. Hudson, the Scottish-American Mortgage Company, Limited, is estopped from claiming the nonpayment of the mortgage debt.   In the case of Investment Co. v. Ganzer (decided at the last term of this court) 11 C. C. A. 371, 63 Fed. 647, on a review of the authorities, it was held that although, as a general rule, the principal is bound by the knowledge of his agent and by his acts within the scope of his authority, the principal is not bound by the uncommunicated knowledge of his agent, where the agent and parties dealing with him have colluded for fraudulent purposes, for in such a case the agent cannot be presumed to have communicated his own delinquency to the principal.   As a matter of fact, the present record shows that neither the Scottish-American Mortgage Company, Limited,

nor its authorized agents other than Simpson, had any actual knowledge with regard to the proceedings of Simpson other than as represented by him, to wit, that the note was outstanding; the interest promptly paid; that there had been a renewal of two years from 1888 to 1890; and that $2,500 had been paid upon the principal. The ratification by the mortgage company of the acts of Simpson, as claimed by appellant C. P. Hudson, because the mortgage company has not returned the alleged payment of $2,500 credited by Simpson on the books as paid by A. J. Hudson, is not supported by facts in the case. The proof shows that the mortgage company did not discover the fraudulent acts and conduct of Simpson until the jurisdiction of the court a qua had fully attached, and there was nothing left for the already impleaded company to do, save make a full disclosure, and pray for equity. Under these circumstances, as we view the law, we are constrained to hold that, as to the Scottish-American Mortgage Company, Limited, the lien created by the deed of trust, December 12, 1883, has not been extinguished any further than the note to secure which it was given has been paid, and that of this lien the appellee Randolph, complainant in the court below, is charged with constructive notice under the registration laws of the state of Texas.

The second assignment of error on the part of the appellant mortgage company is as follows:

"The court erred in not holding with this respondent, the Scottish-American Mortgage Company, Limited, that it held a valid lien upon the lands in controversy in this case under the deed of trust dated December 12, 1883, and that it was entitled to a foreclosure to pay the balance of said note of $5,000, to wit, $2,500, with interest from December 1, 1890, as against all the parties to this cause; and in refusing to sustain this respondent's fifth exception to the master's report, which exception is as follows: 'The said report should have shown, and the said master should have found, that this defendant the Scottish-American Mortgage Company, Limited, held a valid lien upon the lands in controversy in this case under the trust deed of December 12, 1883, and this defendant, the said company, was entitled to a foreclosure of the said lien to pay the balance of the said note for $5,000, to wit, $2,500, and interest on the same from the 1st day of December, 1890, as against all the parties to this suit; whereas the said master, in his said report, deprives this defendant, the said Scottish-American Mortgage Company, Limited, of its security for the said debt.'"

This assignment of error must be sustained, and the decree of the court appealed from corrected accordingly.

The decree appealed from should be reversed as to costs of court, and otherwise amended as follows: Strike out the last clause thereof relating to costs, and insert: "It is further ordered, adjudged, and decreed that the complainant, L. V. F. Randolph, shall take the title and possession of the said lands described as aforesaid, subject to the valid lien held by the cross complainant, the Scottish-American Mortgage Company, Limited, upon the same, under the deed of trust executed by A. J. Hudson and wife on December 12, 1883; and, further, it is adjudged that there is due upon the note secured by the said deed of trust to the Scottish-American Mortgage Company the sum of $2,500, with interest thereon at the rate of eleven per cent. per annum from December 1, 1890, until paid." It is fur-

ther ordered, adjudged, and decreed that the said L. V. F. Randolph, A. J. Hudson, and others, defendants, do pay into the registry of the court, for the use and benefit of the said Scottish-American Mortgage Company, Limited, the said sum of $2,500, with 11 per cent. per annum interest thereon from December 1, 1890, together with all costs incurred in the prosecution of said cross bill, to be taxed by the clerk within 30 days from the date this decree is entered, in default of which payment, on the application of the Scottish-American Mortgage Company, Limited, or its solicitor of record, an order of sale may issue commanding and directing A. S. Lathrop, Esq., standing master, to sell, after 30 days' advertisement in some newspaper of general circulation published in Johnson county, state of Texas, the lands described in this decree, or so much thereof as may be necessary to pay and satisfy the said lien, interest, and costs; said standing master to make report of his doings in the premises, and to pay into the registry of the court the proceeds of such sale, to be distributed in accordance with this decree, and under such further orders of the court as may be necessary. It is further ordered, adjudged, and decreed that the respondents James B. Simpson and C. P. Hudson do pay the costs of this suit, and that the complainant, L. V. F. Randolph, do have his writ of possession for the land above described, and his execution as at common law for the amount herein adjudged against the respondents James B. Simpson and C. P. Hudson, and that the clerk do have his execution for costs of suit against the parties adjudged to pay the same. And it is so ordered, the costs of appeal, including the costs of transcripts, to be adjudged, one-half against the appellee L. V. F. Randolph, and the other half against the appellant C. P. Hudson.