## ODBERT et al. v. MARQUET et al.

(Circuit Court of Appeals, Fourth Circuit. November 4, 1909.)

No. 891.

1. APPEAL AND ERROR (§ 184*)—JURISDICTION—ADEQUATE REMEDY AT LAW— WAIVER OF OBJECTION.

Objection to a bill for want of equity on the ground of an adequate remedy at law is waived if not taken in the trial court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1179–1183; Dec. Dig. § 184.*]

2. COURTS (§ 405*)—CIRCUIT COURTS OF APPEALS—APPELLATE JURISDICTION— FINALITY OF DECREE—DECREES APPEALABLE.

A decree of a Circuit Court, which merely determines that complainants are entitled to recover damages from a defendant for fraudulent misrepresentations, and refers the matter to a special master to find and report such damages, is interlocutory, and not appealable to the Circuit Court of Appeals.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 1099; Dec. Dig. § 405.*

Jurisdiction of Circuit Courts of Appeals in general, see notes to Lau Ow Bew v. United States, 1 C. C. A. 6; United States Freehold Land & E. Co. v. Gallegos, 32 C. C. A. 475.]

3. COURTS (§ 405*)—CIRCUIT COURTS OF APPEALS—APPELLATE JURISDICTION— FINALITY OF DECREE.

A decree of a Circuit Court on a cross-bill, which orders complainants to pay to cross-complainant the amount due on certain notes, and directs that on default for a certain time a special master shall sell certain collateral to apply thereon, is a final decree and appealable to the Circuit Court of Appeals.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 1099; Dec. Dig. § 405.*]

4. BILLS AND NOTES (§ 113*)—RIGHTS OF INDORSEE—ESTOPPEL OF MAKER BY RENEWAL.

The makers of negotiable notes, who, after such notes had been purchased from the payee by a bank, sought and obtained renewals from the bank, giving new negotiable notes and taking up the old, are estopped as against the bank to set up the defense of failure of consideration on account of fraudulent representations made by the payee.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 223; Dec. Dig. § 113.*]

Appeal and Cross-Appeal from the Circuit Court of the United States for the Northern District of West Virginia, at Parkersburg.

Suit in equity by H. S. Odbert, H. S. Odbert, Jr., George D. Odbert, and William H. Warner against William Marquet, the First National Bank of New Cumberland, and T. M. Scott. Appeal by complainants from a decree on cross-bill, and cross-appeal by defendant Marquet from decree on original bill. Decree on cross-bill affirmed, and cross-appeal dismissed.

For opinion below, see 163 Fed. 892.

Oliver S. Marshall, John Marshall, and Reese Blizzard, for appellants.

J. B. Sommerville, Henry M. Russell, and Jno. A. Campbell, for appellees.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Before PRITCHARD, Circuit Judge, and WADDILL and McDOWELL, District Judges.

McDOWELL, District Judge. The following statement of facts is taken from the opinion of the trial court (163 Fed. 892):

"S. H. Odbert, Jr., and George T. Odbert, in August, 1906, filed their original bill in this court against William Marquet, and some months afterwards, by leave of court, they, with W. H. Warner and H. S. Odbert, Sr., joined as plaintiffs, filed an amended and supplemental bill in the cause against said William Marquet and the First National Bank of New Cumberland, in which the plaintiffs allege themselves to be citizens of Ohio, the defendant Marquet to be a citizen of West Virginia, resident in this district, and defendant bank to be a corporation under the national banking laws, having its principal place of business in New Cumberland, in this state, and district; that on September 11, 1902, plaintiffs purchased from defendant Marquet 2,000 shares of the stock of the Marquet Coal Company, a West Virginia corporation, at the price of $54 per share, or $108,000; that said stock so purchased was divided between and held by plaintiffs, 360 shares by H. S. Odbert, 320 shares by H. S. Odbert, Jr., 320 shares by Geo. T. Odbert, and 1,000 shares by W. H. Warner; that the capital stock of the company was $50,000, divided into 2,000 shares of par value $25 each, and by said purchase they became the owner of all thereof; that at the time of purchase of this stock there existed a deed of trust upon the property of this company for $25,000 in favor of F. W. Stewart, assignee of John A. Campbell, of which sum plaintiffs paid $15,000, leaving $10,000 unpaid, but not yet due; that plaintiffs assumed to pay off and discharge this trust debt as it should become due; that at the time of plaintiffs' purchase of this stock defendant Marquet owned the property of the Marquet Coal Company for which company a certificate of incorporation had been obtained, but the stock thereof had not been issued, nor had the property been conveyed to it by Marquet; that issue of stock and conveyance of the property was made after sale to plaintiffs; that for said purchase-money consideration H. S. Odbert, Sr., paid certain sums in cash and executed certain notes, payable in one, two, three, and four years, bearing 5 per cent. interest, to defendant Marquet, payable at the First National Bank of Cleveland, Ohio, and Geo. T. Odbert and H. S. Odbert, Jr., respectively, did likewise, while plaintiff Warner executed certain notes payable in one, two, three, four, and five years, payable with 5 per cent. interest at the Colonial National Bank of Cleveland, Ohio; that the plaintiffs at the time of purchase transferred to Marquet the said H. S. Odbert 220 shares, H. S. Odbert, Jr., 240 shares, Geo. T. Odbert 240 shares, and W. H. Warner 700 shares, of said stock as collateral to secure the payments of said purchase-money notes due from each, respectively, and subsequently H. S. Odbert, Jr., and Geo. T. Odbert renewed their notes, and each transferred 80 additional shares of the stock as additional security; that the property of said coal company consists of the coal underlying 192 acres of land, also under a tract of 40 acres, and the surface of some 60 acres, with buildings and improvements, in Hancock county, W. Va., the tipples, tramways, buildings, machinery, horses, mules, carts, tools, and appliances of all kinds used by the company in mining coal, and a railroad extending from the tipple and mines about two miles to the Pittsburg, Cincinnati, Chicago & St. Louis Railway at New Cumberland, with its locomotives, cars, etc., used in transporting said coal.

"It is then charged in said bills that defendant Marquet in selling said stocks to plaintiffs made false representations, knowing them to be false, touching the property of said coal company; that he represented that the title to the property was good and unincumbered, when, in fact, the railroad was in fact located upon land for which said coal company had no title whatever; that it is located upon lands of Mary A. Stewart, Stewart Bros., and E. D. Stewart for a distance of one mile without any right or title, and the loss of such railroad, it is charged, would render the property almost valueless; that Marquet, knowing it to be false, represented that the coal was continuous, that it ran up and over the hills, did not run out, and that there was but one 'horseback' on the property, while in fact there are over 100 such on it; that

a shaft had been sunk upon the property, and thereby it had been ascertained that the coal seam was four feet in thickness, when in fact it was only three feet three inches, he knowing at the time that a seam of three feet three inches could not be profitably mined there; that he had options on 600 acres of adjoining property which he had turned over to the company; and that the coal extended under these 600 acres, when in fact little or no coal extended under these 600 acres as was known by Marquet.

"It is then charged that plaintiffs had no personal knowledge of the facts set out, that they relied solely upon the representations of Marquet, who represented these facts falsely to them, knowing them to be false; that said Marquet having given notice to said H. S. Odbert, Jr., and George T. Odbert of his purpose to sell the shares of their stock held by him as collateral on August 20, 1906, at public auction, they on August 13, 1906, presented to this court the original bill herein, and secured a temporary restraining order against such sale and pending a hearing, which was continued on the return day in September, the defendant the First National Bank of New Cumberland instituted at October rules, 1906, in the circuit court of Hancock county, W. Va., a suit in equity against the Marquet Coal Company, the plaintiffs, and others, alleging it to be the holder of said notes and shares of stock transferred to Marquet as collateral, and praying that a receiver be appointed for said company, and the said stocks be sold to pay said notes. It is then specifically charged in the amended and supplemental bill that the defendant bank was not an innocent purchaser of said notes and stocks, for shortly after the purchase of the property one of the plaintiffs, taking with him a witness, had notified the cashier of said bank not to discount or purchase said notes or any of them, informing him that the property had been misrepresented, and that payment of the notes would be resisted. An injunction was prayed in the original bill against the sale and disposition of the stock and notes by Marquet and in the amended bill against the prosecution of said equity suit, that the damages and loss sustained by reason of the false representations made by Marquet be ascertained and decreed to plaintiffs, and general relief be granted them.

"Restraining orders were granted, and to these bills the defendants Marquet and bank have filed separate answers. In these answers the sale of the stock at the price named in the bill and the execution of the notes therefor are admitted, but all allegations of fraudulent misrepresentations by Marquet as to the property are denied. It is also denied that the title to the railroad is defective or bad, or that the plaintiffs were without full knowledge of the condition and extent of the property and of the seam of coal. It is charged that the bank discounted the notes before due in regular course of business, and without knowledge of any claim of offset or defense by reason of fraud or misrepresentation as charged.

"In addition to filing its answer, the bank, by leave, filed its cross-bill, in which it sets forth its ownership of certain notes of the plaintiff Odberts and Warner and of the stock of the coal company as collateral, and charges that the Odberts and Warner have been operating the mines of the company, have removed large quantities of coal and thereby depreciated largely the value of the property; have improperly operated the mines, to its great injury, so that the value of the property has depreciated from $100,000 to $40,000; and that they are negotiating a sale of the two miles of railroad in order to interfere with and prevent a sale of the property. It is prayed that an injunction be granted against such sale of the railroad, and that a receiver be appointed to operate the property. The injunction prayed for in this cross-bill was granted, and the application for receiver was continued from time to time at the instance of the parties. The Odberts and Warner filed their joint answer to this cross-bill, in which they deny that they have improperly operated the mines, and, on the contrary, charge these mines to be in first-class condition, as shown by the reports of the state mine inspector. They deny that the property has depreciated in value; but, on the contrary, charge that they have spent $40,000 in improvements placed upon it, and have purchased and added to it coal under adjoining lands almost equal in amount to that mined by them, and have improved and equipped mines and railroad until they are in first-class order. They deny that they have been seeking to sell the railroad, that Marquet had any authority under the agreement to sell or convey to the bank

the stock certificates pledged to him as collateral, and charge that the sum of about $32,000 due upon the unpaid notes will not be sufficient to indemnify them the damages sustained by them by reason of the false and fraudulent representations made at the time of sale by Marquet, whom they charged to be insolvent. Marquet filed his answer to this cross-bill, admitting all of its allegations to be true, and joining in the prayer thereof. Replications to all these answers to the original and cross-bills were entered and depositions were taken. Pending the taking of these depositions, the bank sued out an attachment in its equity suit pending in the state court based upon an affidavit of its president and Marquet against funds due the Odberts and Warner, whereupon a petition was filed by them, a rule issued against the bank, its president, and Marquet. Answer was filed thereto by them, affidavits were filed, a hearing was had, and the bank, its president, and Marquet held to be in contempt of the injunction awarded plaintiffs, and they were required to dismiss said attachment and pay the costs of the rule, which they did."

The appellants here were the complainants below; Wm. Marquet, a defendant below is the only cross-appellant; and the appellants are the cross-appellees.

At the hearing the appellants moved that further bond be required of cross-appellant, Marquet. Upon such consideration as we were able to give to this motion at that time, we thought it proper to decline to act. In view of the conclusion hereinafter stated as to the cross-appeal by Marquet, the motion is now overruled. In this connection, however, it may be advisable that we call attention to the fact that the cross-appeal which was finally perfected was not allowed until more than 60 days, exclusive of Sundays, after the entry of the decree had elapsed. See sections 1007, 1012, Rev. St. (U. S. Comp. St. 1901, p. 714, 716); Hogan v. Ross, 11 How. 294, 13 L. Ed. 702; Saltmarsh v. Tuthill, 12 How. 387, 13 L. Ed. 1034; Hudgins v. Kemp, 18 How. 530, 15 L. Ed. 511; Railroad v. Harris, 7 Wall. 574, 19 L. Ed. 100; Com'rs v. Gorman, 19 Wall. 661, 22 L. Ed. 226; Kitchen v. Randolph, 93 U. S. 86, 23 L. Ed. 810; Sage v. Railroad Co., 93 U. S. 412, 23 L. Ed. 933; Western Co. v. McGillis, 127 U. S. 776, 8 Sup. Ct. 1390, 32 L. Ed. 324; Foyles v. Law, Fed. Cas. No. 5,024; The Roanoke, Fed. Cas. No. 11,875; New England Co. v. Hyde, 101 Fed. 397, 41 C. C. A. 404; Logan v. Goodwin, 101 Fed. 655, 41 C. C. A. 573.

The decree appealed from, in so far as it relates to cross-appellant Marquet, will be hereafter set out. The remainder of the decree is a finding that the Bank of New Cumberland and Porter M. Scott are the holders in due course, by purchase before maturity, for value and without notice, of certain negotiable purchase-money notes, or renewals thereof, mentioned in the foregoing opinion, and an order that the complainants below pay to said parties the amounts evidenced by said notes. The decree also directs that if payment be not made to the bank by December 1, 1908, a special master shall advertise and sell the stock held by the bank as collateral. P. M. Scott was not a party defendant to either the original or to the amended and supplemental bill. In the decree appealed from it is recited that he purchased certain of the notes from the bank after the latter had answered, and his motion that he be made a party defendant is granted, and his answer (evidently treated as an answer and cross-bill) is filed.

We find it unnecessary to consider the point that there is a want of

equity in the bills of the complainants below. The bank did not demur. It answered and filed a cross-bill and did not until this court was reached suggest a want of equity or that the remedy of complainants at law was adequate. Marquet demurred only to the original bill, and it was accompanied by an answer to the whole of the bill, which waived the demurrer. See 1 Bates, Fed. Eq. § 207; Crescent Co. v. Butchers' Co. (C. C.) 12 Fed. 225; Huntington v. Laidley (C. C.) 79 Fed. 865; Hudson v. Randolph, 66 Fed. 216, 13 C. C. A. 402. No objection whatever to the jurisdiction was raised by Marquet after the filing of the amended and supplemental bill, which he answered.

The bills below allege fraud, and while there might have been some room for doubt, had the point been raised in limine, as to the equity of the bills, on the ground of adequate remedy at law, we are relieved of the duty of deciding the question. The objection, if it existed, has been waived. In Reynes v. Dumont, 130 U. S. 354, 395, 9 Sup. Ct. 486, 497 (32 L. Ed. 934), it is said:

"The doctrine of these and similar cases is that the court, for its own protection, may prevent matters purely cognizable at law from being drawn into chancery, at the pleasure of the parties interested; but it by no means follows, where the subject-matter belongs to the class over which a court of equity has jurisdiction, and the objection that the complainant has an adequate remedy at law is not made until the hearing in the appellate tribunal, that the latter can exercise no discretion in the disposition of such objection. Under the circumstances of this case, it comes altogether too late even though, if taken in limine, it might have been worthy of attention."

See, also, Kilbourn v. Sunderland, 130 U. S. 505, 514, 9 Sup. Ct. 594, 32 L. Ed. 1005; Brown v. Lake Superior Co., 134 U. S. 530, 535, 10 Sup. Ct. 604, 33 L. Ed. 1021; Tyler v. Savage, 143 U. S. 79, 97, 12 Sup. Ct. 340, 36 L. Ed. 82; Highland Co. v. Strickley, 116 Fed. 852, 854, 54 C. C. A. 186, 188, in which it is said:

"One who consents to the hearing in equity of a legal cause of action, or to the trial of an equitable cause of action at law, is thereby estopped from successfully objecting for the first time in an appellate court to the method of trial which he adopted."

The next question to which we shall address ourselves is whether or not the decree below is appealable.

(1) As to Marquet, the only cross-appellant here, the decree reads as follows:

"And the court having fully considered all of the matters arising in said cause, for reasons appearing in the written opinion filed herein on the 19th day of August, 1908, and now here made a part of the record in this cause, doth adjudge that the plaintiffs are entitled to recover damages from the defendant, William Marquet, by reason of certain misrepresentations made by said William Marquet to said plaintiffs, or some of them, with respect to the railroad mentioned and described in the bill and proceedings in said cause, and by reason of certain misrepresentations made by said William Marquet to said plaintiffs, or some of them, to the effect that the coal underlying the two certain parcels of land mentioned and described in said bill and proceedings, which, under the sale of the stock mentioned and described in said bill and proceedings, passed to the plaintiffs, was continuous and of at least four feet in thickness and for the increased cost of mining the coal where less than four feet in thickness, as set forth in said written opinion.

"It is therefore adjudged, ordered, and decreed that R. M. Brown be, and he is hereby, appointed a commissioner, pro hac vice, of this court, who is directed to ascertain and report:

"(1) The damages which said plaintiffs and each of them are entitled to recover, by reason of the said misrepresentations of said William Marquet with respect to the title of said railroad, mentioned and described in the bill and proceedings in this cause.

"(2) The damages for lack of coal underlying the two parcels of ground described in said bill and proceedings in this cause, which said plaintiffs and each of them are entitled to recover from said William Marquet by reason of his misrepresentation of the quantity thereof.

"(3) The damages by reason of the increased cost of mining the coal underlying the two parcels of land aforesaid.

"(4) Any other matter deemed pertinent by said commissioner, or required by any party to this suit."

This decree does not grant or continue in force an injunction, and it does not appoint a receiver. This court therefore has no jurisdiction to review the decree at the instance of Marquet, unless it be a final decree. See section 6 of Evarts Act of March 3, 1891, c. 517, 26 Stat. 828, 4 Fed. St. Ann. 409 (1 U. S. Comp. St. 1901, p. 549).

In Forgay v. Conrad, 6 How. 205, 12 L. Ed. 404, Chief Justice Taney said:

"In limiting the right of appeal to final decrees, it was obviously the object of the law to save the unnecessary expense and delay of repeated appeals in the same suit; and to have the whole case and every matter in controversy in it decided in a single appeal."

If it be assumed that the solution of the dispute by the court below is correct, and if this court were to so decide, there will be no reason why either Marquet or the complainants may not bring this case here by appeal again. The decree complained of does decide a principle of the cause; but it does not—in so far as the dispute between Marquet and the complainants is concerned—direct the payment of money, nor does it order the transfer of possession of other property; and the special master is most clearly directed to perform judicial duties, which are necessarily to be followed by a further decree.

In McGourkey v. Railroad Co., 146 U. S. 536, 545, 13 Sup. Ct. 170, 172 (36 L. Ed. 1079), it is said:

"It may be said in general that if the court make a decree fixing the rights and liabilities of the parties, and thereupon refer the case to a master for a ministerial purpose only, and no further proceedings in court are contemplated, the decree is final; but if it refer the case to him as a subordinate court and for a judicial purpose, as to state an account between the parties, upon which a further decree is to be entered, the decree is not final."

Latta v. Kilbourn, 150 U. S. 524, 537, 539, 14 Sup. Ct. 201, 37 L. Ed. 1169, is in principle closely similar to the case at bar. There a decree was entered on October 27, 1886, which settled the principles of the cause, fixed the share of complainants in certain profits, and ordered the auditor to take and state an account of the profits, from the proofs already taken and such further proofs as the parties might offer, and decreed that the defendant pay all the costs of the cause. No appeal was taken from this decree. On November 30, 1888, the report having come in, a decree was entered which overruled exceptions to the report and ordered the defendant below (appellant) to pay to

complainants (appellees) the sums ascertained by the report. On the appeal from .this last decree, the appellees contended that the decree of October 27, 1886, was a final decree. This contention was rejected, the court asserting its clear opinion that that decree was interlocutory and of such character that no appeal would lie therefrom.

In Craighead v. Wilson, 18 How. 199, 15 L. Ed. 332, the syllabus reads:

"Where a case in chancery was referred to a master to state accounts between the plaintiffs and defendants, to ascertain how much property remained in the hands of the latter, and how much had been sold, with the prices, to make allowances to the defendants for payments made or incumbrances discharged, and to ascertain what might be due from either defendant to the plaintiffs, this was not such a final decree as could be appealed from to this court.

"Although the decree settles the equities of the bill, yet the amount to be distributed amongst the parties depends upon the facts to be reported by the master; and, until the allotment to each one of the share to which he might be entitled, the decree cannot be considered as final."

And in the opinion it is said:

"To authorize an appeal, the decree must be final in all matters within the pleadings, so that an affirmance will end the suit."

In Beebe v. Russell, 19 How. 283, 285, 286, 15 L. Ed. 668, a case of an appeal from a decree settling the equities of the case and referring the cause to a master for an account, it is said:

"When a decree finally decides and disposes of the whole merits of the cause, and reserves no further questions or directions for the future judgment of the court, so that it will not be necessary to bring the cause again before the court for its final decision, it is a final decree. * * * But the reference of a case to a master, to take an account upon evidence, and from the examination of the parties, and to make or not to make allowances affecting the rights of the parties, and to report his results to the court, is not a final decree, because his report is subject to exceptions from either side, which must be brought to the notice of the court before it can be available. It can only be made so by the court's overruling the exceptions, or by an order confirming the report, with a final decree for its appropriation and payment."

See, also, Perkins v. Fourniquet, 6 How. 206, 12 L. Ed. 406; Barnard v. Gibson, 7 How. 650, 675, 12 L. Ed. 857; Farrelly v. Woodfolk, 19 How. 288, 15 L. Ed. 670; Crosby v. Buchanan, 23 Wall. 420, 453, 23 L. Ed. 138; Green v. Fisk, 103 U. S. 518, 26 L. Ed. 485; Keystone Iron Co. v. Martin, 132 U. S. 91, 10 Sup. Ct. 32, 33 L. Ed. 275; Lodge v. Twell, 135 U. S. 232, 10 Sup. Ct. 745, 34 L. Ed. 153; National Enameling Co., Ex parte, 201 U. S. 156, 163, 26 Sup. Ct. 404, 50 L. Ed. 707; Pittsburg R. Co. v. B. & O. R. Co., 61 Fed. 705, 708, 10 C. C. A. 20—all of which are analogous to the case at bar.

As the case before us is not a mortgage foreclosure, it seems quite unnecessary to discuss such cases as Whiting v. Bank, 13 Pet. 6, 10 L. Ed. 33, Railroad Co. v. Simmons, 123 U. S. 52, 8 Sup. Ct. 58, 31 L. Ed. 73, and cases there cited.

Nor is it necessary to discuss cases such as Forgay v. Conrad, 6 How. 201, 12 L. Ed. 404, supra, Thompson v. Dean, 7 Wall. 342, 19 L. Ed. 94, and Winthrop v. Meeker, 109 U. S. 180, 3 Sup. Ct. 111, 27 L. Ed. 898, in which the equities were settled and property ordered to be delivered by the decree appealed from. The case at bar is readily

discriminated from such cases by the fact that the cross-appellant is not directed by the decree appealed from to pay any sum of money to the complainants below; he is not directed to surrender any property, and the decree is clearly merely preparatory to a further decree. Of the decree in Winthrop v. Meeker, supra, the Supreme Court said (page 183 of 109 U. S., page 133 of 3 Sup. Ct. [27 L. Ed. 898]): "The whole purpose of the suit has been accomplished." Assuredly this cannot be said of the decree here, as between Marquet and the complainants below.

It follows that this court has no jurisdiction of the cross-appeal of Marquet against the complainants below, appellants here, and that said cross-appeal must be dismissed.

(2) In so far as the appellants, complainants below, claim to be aggrieved by the decree below, it seems to us to be final. The decree orders that the complainants pay the notes to the bank and to Scott and directs that on default the stock held by the bank as collateral security be sold. All matters of dispute between the complainants below and the defendants, other than Marquet, are finally determined by this decree. If the decree had not in this respect been superseded, the collateral would have been sold before this time. No judicial action is required of the special master who is ordered to sell the collateral; he is to perform a purely ministerial duty, by way of executing the decree. We perceive no reason why the decree in this respect is not final in the sense that it is appealable. See Hill v. Railroad Co., 140 U. S. 52, 11 Sup. Ct. 690, 35 L. Ed. 331; National Enameling Co., Ex parte, 201 U. S. 156, 165, 26 Sup. Ct. 404, 50 L. Ed. 707; Kemp v. Bank, 109 Fed. 48, 50, 48 C. C. A. 213; Morrison v. Burnette, 154 Fed. 617, 622, 83 C. C. A. 391; Standley v. Roberts, 59 Fed. 836, 839, 8 C. C. A. 305.

Upon consideration of the merits of this branch of the case we find no reason for disturbing the decision below. Careful study of the evidence leads us to the same conclusion reached by the learned trial judge. See Swift v. Tyson, 16 Pet. 1, 10 L. Ed. 865; Goodman v. Simonds, 20 How. 343, 15 L. Ed. 934; Murray v. Lardner, 2 Wall. 110, 121, 17 L. Ed. 857; Brown v. Spofford, 95 U. S. 474, 481, 24 L. Ed. 508; Swift v. Smith, 102 U. S. 442, 444, 26 L. Ed. 193; Lytle v. Lansing, 147 U. S. 59, 70, 13 Sup. Ct. 254, 37 L. Ed. 78; Wilson v. Denton, 82 Tex. 531, 18 S. W. 620, 27 Am. St. Rep. 908, 911: Second National Bank v. Morgan, 165 Pa. 199, 30 Atl. 957, 44 Am. St. Rep. 652, 653; 1 Daniel Negot. Insts. (3d Ed.) §§ 770-775; 7 Cyc. 944.

The decree of the trial court of September 29, 1908, in so far as it is in favor of the First National Bank of New Cumberland and Porter M. Scott, is affirmed, with costs; the cross-appeal of Wm. Marquet against complainants below is dismissed; and this cause is remanded for such further proceedings as may be proper.