## Ottawa Banking and Trust Company, Appellant, v. Anna N. Kendall, Appellee.

### Gen. No. 7,023.

NEGOTIABLE INSTRUMENTS—*renewal as waiver of fraud in original note.* A maker of notes given as consideration for corporate stock purchased who has recognized such notes as valid in the hands of a subsequent purchaser is estopped to assert that the original notes were secured by fraud where, with knowledge of all the facts, such maker renewed the notes from time to time and made payments thereon reducing the alleged indebtedness by more than half and where the holder of the notes, by reason of such renewals, has surrendered other securities.

Appeal by plaintiff from the Circuit Court of Bureau county; the Hon. JOE A. DAVIS, Judge, presiding. Heard in this court at the October term, 1921. Reversed and remanded. Opinion filed January 24, 1923.

CAIRO A. TRIMBLE and MCDOUGALL & CHAPMAN, for appellant.

JAMES A. CONWAY, SAMUEL B. HILL and JOSEF T. SKINNER, for appellee.

MR. JUSTICE JETT delivered the opinion of the court.

The appellant took judgment by confession in the circuit court of Bureau county for $5,399.77 and cost, based on a note of $4,989.40. A motion was made by appellee to open up the judgment with leave to plead, which motion was allowed. Pleas were filed to the declaration and replications filed to the pleas and a trial was had and the issues were submitted to a jury and a verdict rendered for the appellee upon which judgment was rendered and from which judgment this appeal is prosecuted. On March 5, 1910, one J. C. Hamil, who was then the vice president, and one Joseph Stout, who was the secretary of the South Bend Life Insurance Company, sold to the appellee 600 shares of stock of that company for $15,000, and in payment of the same appellee gave two notes each for $7,500, one due in thirty days after date and the other one due one year after date.

In April, 1910, after the first $7,500 note was due, it was placed in the bank of appellant for collection and various efforts were made by Johnson, the president of the bank, to collect the note but without success. Johnson made investigation and found that the appellee was financially good, and on May 27, 1910, purchased of Stout the $7,500 note due in thirty days, and took the $7,500 note due in one year as collateral security for a $15,000 note then executed to the appellant by said Stout. The appellee up to this time had not informed Johnson, the president of appellant, nor had she informed the appellant that she had any defense to the note but on April 20, 1910, wrote the appellant she would pay the note soon. Each of the

$7,500 notes was payable to the order of Stout and by him indorsed by a general bank indorsement. After the purchase of said thirty-day note and the taking of said note due in one year as collateral, and after the former note came due, it appears that repeated demands were made with threats to bring suit and frequent requests for delays and extensions on the part of appellee with promises by her of payment.

It appears that on June 3, 1910, appellee wrote that she was making an effort to get the money, and on the same day she wrote Johnson and, among other things, said this "note is perfectly good." On June 4, 1910, appellee wrote Johnson, "I am unable to get the money to pay the note due." On June 5 she wrote Johnson, "I cannot tell how deeply mortified I am over this, nor how much I appreciate your great kindness in the matter. Rest assured you shall not lose anything by this." It further appears after frequent demands and no payments being made a meeting was held in the office of R. L. Russell, the attorney for appellee, and at which meeting there were present appellee, her attorney, and Johnson. This meeting was in the early part of October, 1911, at Princeton. It further appears that prior to this meeting Hamil had obtained a judgment in the circuit court of McHenry county against Joseph Stout for the sum of $5,005.83, $4,500 of which amount was for commissions on the sale of the 600 shares of stock to appellee, the agreement between Stout and Hamil being that each should have one-half of all commissions received from the sale of stock. At this conference, Johnson demanded a settlement at once. At this meeting of the above-named parties the Hamil judgment was mentioned. Appellee stated that Stout ought to make good one or more of the notes, and Johnson said to her he would be glad to have her make any arrangements she could with Stout. It appears nothing, however, was accomplished at this conference. Early in

December of the same year, 1911, another conference was had at the office of Russell, attorney for appellee, at Princeton, at which time were present appellee, Johnson, Russell, representing appellee, Stout, and for a short time Judge Hinebaugh. Johnson again insisted on the payment of the note but stood ready to render any assistance to any of them that he could; that if appellee wanted more time she could have it on her unsecured notes, and if Stout wanted more time he could have it if he had proper collateral security acceptable to the bank. Appellee, Russell and Stout conferred but did not reach any agreement and Johnson left. The next day he received a letter from appellee and also a telephone message from Russell, sent at the request of appellee, saying there was a chance to come to an agreement with Stout, and arranging for a meeting at the bank of appellant in Ottawa for December 12, 1911. Appellee and Russell, her attorney, on December 12, 1911, went to the bank and informed Johnson that they had come to take up the two $7,500 notes. The interest was computed and found to be $975, and it was then agreed that appellee should take up her two $7,500 notes and give the bank three $5,000 notes for the principal of said two $7,500 notes, one due in six months and the other two in one year, and that she should also give a note for $975, the accrued interest due in six months. Johnson gave Russell some blank notes and he drew the notes agreed upon, appellee signed them and delivered them to Johnson. Johnson surrendered to the appellee the two $7,500 notes, which the bank then owned and which had been indorsed by Stout, and the certificate for 600 shares of stock in the South Bend Life Insurance Company which had been put up by her with the bank as collateral security for her two $7,500 notes. At or near the time of the conclusion of the last abovementioned transactions, Stout appeared at the bank and he, Russell and appellee had a conference and

Judge Hinebaugh was called into the conference as Stout's attorney. Johnson was not present at this conference. Appellee insisted that Stout should take the stock back and repay her the $15,000 which she had paid for the stock, and Stout insisted that it would not be fair to do that and then have to pay Hamil $4,500 commission on the stock sold her. It was agreed that Stout would repurchase the stock by giving appellee his notes for $15,000, secured by the 600 shares of stock which had been issued to her, and that appellee should obligate herself to secure a release of the Hamil judgment against Stout, Stout to pay the balance of the judgment over the $4,500 commission on the sale of the stock, amounting to $505.83, appellee signing a written obligation binding herself to secure a release of said judgment from Hamil, which she thereafter procured. The Stout notes, the certificate of stock and some other papers appellee then and there delivered to her attorney to retain for her. Appellee afterwards gave the three $5,000 notes executed to her by Stout to a man by the name of Thomas, in whom she had confidence, to collect, and she says she could not get the notes nor the money and that Thomas had left the country. Appellee after giving her four notes to the bank, being the three $5,000 notes with which to take up the two $7,500 notes and the note for $975, the accrued interest, made payments thereon from time to time, and gave renewal notes for the balance due from time to time, from December 12, 1911 until March 9, 1915, at which time there was due only a balance of $4,989.40, and for that amount she then gave her note to the bank due in ninety days after date. Thereafter she made no payments and judgment was entered on that note November 22, 1915. There have been made many charges and counter-charges of fraud throughout the argument of this case. Much time has been taken up and space occupied in arguing the charges of fraud that it is claimed is dis-

closed upon the face of the record in this cause. In view of the facts as we gather them, it will not be necessary to consider whether these two original notes for $7,500 each were or were not obtained by fraud. The evidence shows that one of these notes for $7,500 was purchased by the bank, before maturity, and the other one was purchased after maturity, and they were subsequently renewed with three notes of $5,000 each and the fourth note for accrued interest in the sum of $975.

We are of the opinion that the appellee is barred from her defense of fraud for the reason that even though it be conceded that there was fraud in the sale of the insurance stock to her and the execution of the two original notes for $7,500, the evidence shows that Stout, who sold her the stock in the first instance, made a settlement with her and gave her in exchange for her stock three notes of $5,000 each, less the judgment of $4,500 which Hamil had obtained against Stout, which judgment appellee was to have released and which she did have released. These three notes of $5,000 each were executed to her in repurchase of the stock, and as she received from Stout the full consideration which she paid for the stock at the time of the purchase, and which consideration was finally merged in the note in question in this case, the property of the appellant, the appellee is in no position to sustain any charge of fraud with reference to fraud or failure of consideration in the notes originally executed by her to Stout. The settlement with Stout was in writing and was to her satisfaction and the fact that she afterwards lost the notes given to her by Stout is not material in this case. The appellee contends that Johnson, the president of appellant bank, promised her that he would credit upon the balance of the note due and owned by appellant the sum of $4,500, being the amount of the judgment for commissions which Hamil had obtained against Stout.

This statement by the appellee is denied by Johnson and after a careful examination of the record we hold that her claim to such promise of credit for $4,500, or any other sum in this connection, is not sustained by the evidence. The contention of appellee that the two original notes for $7,500 each were to be paid out of the proceeds of the sale of her Missouri land is not sustained by the evidence, and furthermore there is no pleading in this case upon which such claim can be based. ·

We are not unmindful of the fact that one of these notes was purchased after maturity. Relative to the note on which this judgment was based, the appellee up to the time that judgment was entered did not claim she had any defense to the note nor that she was entitled to a credit of $4,500 or any other sum. But she made payments from time to time on the notes given December 12, 1911, and executed renewal notes time and again, and of which number the one now declared upon is one. It will be remembered that the two $7,500 notes executed by appellee were made payable to Stout and by him indorsed and delivered to the bank. By such act, the bank not only owned the notes with the security of the maker, but in addition thereto the security of the indorser. Afterwards the appellee delivered to the bank the 600 shares of stock in the insurance company purchased by her as collateral security for the purchase of the notes. When she admitted her legal liability on the two $7,500 notes and executed and delivered to the bank her three notes for $5,000 each, and her fourth note for the accrued interest in the sum of $975, the bank surrendered to her the two $7,500 notes with the indorsement of Stout thereon, and also the 600 shares of stock in the insurance company. By so doing the bank surrendered the security not only of the indorsement of Stout, but also the security of the stock. This was a valuable consideration for the notes then given and the extension

of time for the payment of the debt evidenced thereby. If appellee, with full knowledge of all the facts of and concerning the transaction in which she participated in the purchase of the stock and relative to the defense she now interposes, recognized her legal liability and gave new notes for the debt with such full knowledge and the appellant surrendered its security, as we have already seen that it did, we are unable to see or understand how it can be successfully claimed that she is not barred from making the defense that the note declared upon was secured by fraudulent representations. A subsequent promise with full knowledge of the facts is certainly equivalent to an original promise made under similar circumstances, and no one acting with full knowledge can justly say that he has been deceived by false representations. *Fitzpatrick v. Flannagan,* 106 U. S. 648.

The case of *Odbert v. Marquet,* 163 Fed. 892, is one very similar to the case under consideration. In *Odbert v. Marquet,* a purchase was made of certain property. The purchaser gave his notes for the purchase price. He claimed he was induced to purchase through fraud. The payee of the notes assigned them to a bank. One of the makers testified that he notified the bank prior to its purchase that he had a defense, but this was denied, afterwards he executed renewal note, and it was held that he was estopped to defend as against the renewal notes.

This last-above mentioned case went to the United States Circuit Court of appeals, Fourth Circuit, and is reported in 175 Fed. 44, and the decision of the district court was affirmed.

In the suit of *E. H. Taylor, Jr., & Sons, Inc. v. First Nat. Bank of Aurora,* 212 Fed. 898, Judge Warrington, speaking for the Court of Appeals of the Sixth Circuit, said: "The rule is that if one, with full knowledge of facts constituting a defense to his note, secures an extension thereof on the faith of his promise

to pay it upon the new maturing date, he ratifies the instrument and so waives his defense."

In *Fosdick v. Myers,* 81 Ill. App. 544, Fosdick, the appellant, executed to one McGregor a certain promissory note to settle some differences between them arising out of transactions in grain. Before said note was due McGregor sold and assigned the same to appellee, who thereupon notified appellant that he had purchased the note, and was informed by appellant that the note was all right and would be paid by him, but that he wanted a little more time in which to pay it; that thereupon appellant executed and delivered to appellee the note in controversy, and appellee gave up and surrendered to appellant the note the latter had previously given to McGregor. Judgment was entered upon the note given by appellant to appellee by confession. Appellant filed his motion to vacate the judgment and for leave to plead. The grounds of the motion were that the original note was given to McGregor to cover losses appellant had sustained in gambling transactions in grain carried on through McGregor, and that appellee knew when he purchased the note what its consideration was and had been told thereof by appellant. On the question of notice to appellee by appellant that the consideration grew out of a gambling contract there was a conflict of evidence.

In deciding the case the court said: "Appellant does not dispute the fact that after appellee purchased the note from McGregor, he told him it was all right and that he would pay it if he had a little more time. This appellee assented to, extended the time and took a new note, surrendered the old one, thereby giving up any right of recourse he might have had against McGregor as indorser, and being placed in altogether a different position to that which he would have occupied had appellant insisted on a defense to the original note. It seems to us the facts of this case are such that appellant ought now to be estopped from insisting on his alleged defense to the original note."

The motion to open the judgment and for leave to plead was denied. What was said by the court in *Fosdick v. Myers,* as above quoted, announces a rule that can be invoked in this case. Other questions are argued by appellee, among them that the full sum of $15,000 together with interest has been paid. We cannot from the evidence produced agree with such contention. Error was committed in giving instructions on the part of appellee. Owing to the conclusion we have reached we will not extend this opinion by discussing the instructions complained of by appellant.

For the reasons already assigned we hold that the facts in this case are such that appellee ought now to be estopped from insisting on her alleged defense to the original notes. We hold that the appellee under the facts in this case cannot insist upon the defense that the original notes were obtained by fraudulent representations. We therefore conclude that the judgment of the circuit court should be reversed and remanded and a new trial granted, which is accordingly done.

*Reversed and remanded for a new trial.*